### COMMONWEALTH *vs.* ROBERT WOOD.

On the trial of an indictment for keeping a house of ill-fame, it appearing that the house was so kept and that the defendant lived and exercised acts of control and management there, *Held,* that the facts that it was owned by his wife, and that she also lived there and carried on the business and received all the profits, were no defence.

To sustain an indictment for keeping a house of ill-fame it is not necessary to prove that it was kept for lucre or gain.

INDICTMENT for keeping a tenement used as a house of ill-fame, resorted to for prostitution and lewdness.

At the trial in the superior court, before *Reed*, J., there was testimony tending to show that the defendant lived in the tenement and there exercised various acts of control and management, but that it was owned by his wife as her separate property; that she also lived there and carried on the business; that it was resorted to for prostitution and lewdness, and that the defendant did not participate in the profits.

Thereupon the defendant asked the judge to instruct the jury that if they should find that the tenement was owned by the wife as her separate property, and that she was carrying on the business, and that the defendant did not participate in the profits, they should acquit him. But the judge declined so to instruct them, and ruled that if the defendant lived in the tenement with his wife, she being the owner thereof, and it was resorted to, with his knowledge, for prostitution and lewdness, he would be liable as keeper, although the profits of the business were all received by the wife.

The defendant further asked the judge to rule that in order to constitute the offence charged it must appear that the place was kept by the defendant for lucre and gain. But the judge instructed the jury that if they should find that the defendant kept the place, and that during the time alleged it was resorted to for prostitution and lewdness, it would not be necessary for them to find that it was kept by him for lucre or gain.

The jury returned a verdict of guilty; and to these rulings and refusals to rule the defendant alleged exceptions.

*C. A. Beach*, for the defendant. There can be no guilt without consent. Consent is not to be presumed from mere knowledge. The defendant may have objected to the acts of his wife. The judge undertook to enumerate to the jury all the necessary elements of guilt, but said nothing of consent, leaving them thereby to infer that it was not necessary. The offence is separable into two parts, active and passive. It does not appear and is not to be presumed that the active part, such as receiving and illicitly entertaining visitors, was committed in the husband's presence. The passive part, being merely the readiness, in the wife's mind, to resume active offending in the husband's ab-

Commonwealth v. Wood.

sence, was not inconsistent with his lawful presence, for over it he could have no control. During the passive intervals the household may have been in the same condition as that of any respectable family. The wife may have been carrying on the business in her own person alone, using her own bed, in his absence. It does not appear that there was any other prostitute living in the house or frequenting it. But, even supposing him present at the active part, the keeping of houses of ill-fame is an offence peculiar to the female sex, and therefore an exception to the general rule that the wife, when committing offences in the presence of the husband, is supposed to act under his coercion. The malfeasance relates to the government of the house, in which the wife has a principal share. She is in this case to be presumed to be the principal agent. 1 Hawk. c. 1, § 12. 1 Bish. Crim. Law, (3d ed.) § 454. 1 Whart. Crim. Law, § 78. *Commonwealth* v. *Lewis*, 1 Met. 151. *Commonwealth* v. *Neal*, 10 Mass. 152.

*C. Allen*, Attorney General, for the Commonwealth. In misdemeanors all who participate in the criminal act are deemed principals. *Commonwealth* v. *Gannett*, 1 Allen, 8. If a married woman, who lives with her husband, keeps a house of ill-fame with his knowledge, he so far participates in her offence as to be liable therefor. See *Commonwealth* v. *Coughlin*, 14 Gray, 389. *Commonwealth* v. *Hurley*, Ib. 411. In this case there was no evidence whatever that the husband disapproved the wife's acts, and there was no request for instructions founded on such an hypothesis. *Commonwealth* v. *Stahl*, 7 Allen, 304. The instructions, however, may well be supported as an abstract proposition. As to this matter, the wife stands as at common law. The authority to conduct the household remains in the husband, even though the wife may own the house and furniture. It cannot be the law that the wife's sole and separate ownership of a bed will deprive her husband of the power, or relieve him from the duty, of preventing its use in his household for lascivious purposes. The recent legislation giving increased rights to married women does not increase the authority of a wife over her husband in his household, or exonerate him from his ordi-

nary duties and responsibilities. Reeve Dom. Rel. 67. By the common law, the husband's presence is coercion, and will excuse ordinary crimes committed by the wife, unless that presumption is rebutted. 1 Russell on Crimes, 18. It is true that this rule does not apply to the offence of keeping a brothel. They may be indicted jointly. But there is no reason why they may not also be indicted separately; and if he is present and has knowledge, in a case like this, it must be held to furnish a conclusive presumption that he approves, unless he shows the contrary. There is authority that even his dissent will not protect him from criminal responsibility for a similar misdemeanor by her, which he ought to control. Dalt. Just. 32. It was not necessary to prove that the house was kept for lucre. *Commonwealth* v. *Ashley*, 2 Gray, 356. *State* v. *Bailey*, 1 Fost. (N. H.) 345. Train & Heard Prec. 328, note 1.

CHAPMAN, J. The defendant contends that he is not liable because the house was owned by his wife as her separate property, and the business of keeping a house of ill-fame therein, which was resorted to for prostitution and lewdness, was carried on by her, and she took the profits thereof, and he did not participate in them. Whether he is liable in such a case must depend upon the relations which he sustains to the household, while he lives with his wife as her husband.

The doctrine of the common law is that by marriage the husband and wife become one person in law; that she is under his protection, influence, power and authority, and that he is the head of the household. This condition of the wife is designated by the expressive term *coverture*. One effect of it is, as a general rule, though subject to many exceptions, to excuse her from punishment for many crimes committed by her in presence of her husband, on the ground that she acted under his compulsion. He alone is held responsible for such crimes. 1 Bl. Com. 442, *et seq.* 1 Russell on Crimes, 18. *Commonwealth* v. *Neal*, 10 Mass. 152. *Commonwealth* v. *Lewis*, 1 Met. 151. *Commonwealth* v. *Coughlin*, 14 Gray, 389. *Commonwealth* v. *Hurley*, ib 411. How far he may exercise force in restraining her is not precisely settled. But there can be no doubt that he may exer

cise as much power as may be reasonably necessary to prevent her as well as other inmates of the house from making it a brothel. It is said in Dalton's Justice that he is liable if she keep an ale-house without license against his will.

But it is contended that the recent legislation of this Commonwealth has made married women so far independent of their 'husbands as to release the defendant, in such a case as the present, from all responsibility for the conduct of his wife. It is true that the house they lived in appears to have been owned by her to her sole and separate use, free from the control of her husband. But ever since the law of equitable trusts existed, married women have been able to hold property thus independent of the husband's control; and the fact that the family lived in a house thus owned has never been regarded as affecting the rights and power of the husband as head of the family. It is also true that under our statute she may carry on a separate trade on her own account. But it has not been decided how far this affects the husband's legal right to control her, nor is it necessary to decide it in this case. These provisions of the statute relate to legitimate business, and not to the keeping of brothels. They do not take away his power to regulate his household so far as to prevent his wife from committing this offence, or relieve him from responsibility if it is committed.

The court properly refused to instruct the jury that it was necessary to prove that the defendant kept the house for lucre and gain. It is not necessary to allege it; *Commonwealth* v *Ashley,* 2 Gray, 356; and of course it is not necessary to prove it. *Exceptions overruled.*