## COMMONWEALTH *vs.* GEORGE HILL.

Bristol.    Oct. 25. — Nov. 23, 1887.    C. ALLEN & KNOWLTON, JJ., absent

At the trial of a criminal case, whether the defendant's counsel shall be allowed to read to the jury provisions of the statutes other than those relating to the offence charged, instead of stating them orally, is within the discretion of the presiding judge, to the exercise of which no exception lies.

If a husband takes no part in keeping a tenement owned by his wife, and used by her as a house of ill-fame, for illegal gaming, or for the illegal sale and illegal keeping of intoxicating liquors, he cannot be convicted of so keeping it, if his wife's acts are done without his consent and against his will; and whether he used all practicable means to prevent her from so keeping the tenement is relevant only on the question of his consent or want of consent.

At the trial of an indictment for keeping and maintaining a tenement used as a house of ill-fame, for illegal gaming, and for the illegal sale and illegal keeping of intoxicating liquors, it appeared that the premises in question were owned and conducted by the defendant's wife; and that he lived there with her, and was present during, and knew of, her illegal acts. The defendant offered evidence to show that, "from time to time during five years prior to the finding of the indictment, he had ordered, directed, persuaded, and used all reasonable and practicable means in his power to prevent his wife from doing any of the acts charged, and that his wife told him the property was hers and she would do as she pleased." The judge excluded any evidence on this point relating to any period prior to the first date named in the indictment. *Held*, that the defendant had good ground of exception.

INDICTMENT for keeping and maintaining a common nuisance, to wit, a certain tenement in New Bedford, used as a house of ill-fame, for illegal gaming, and for the illegal sale and illegal keeping of intoxicating liquors, on January 1, 1886, and on divers other days and times between that day and the day of finding the indictment, June 10, 1886.

Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

The government's evidence tended to show that said tenement, which was a house, was used for the illegal sale of liquor, and was resorted to for prostitution and lewdness during the period covered by the indictment; that the business was transacted with the witnesses by the defendant's wife, in whom was the title to said house, which was paid for by moneys of the defendant; but that the defendant lived with her, and was present and had knowledge thereof. It also appeared that the wife furnished

the food for the table; that the family consisted of themselves and three children; and that the defendant had done no business of his own for two years, but had money of his own to the amount of several hundred dollars, acquired in a business which he had formerly carried on.

The counsel for the defendant, in opening for the defence, stated to the jury that the defendant proposed to show that the dwelling-house and land where the business was carried on was the separate property of the wife, she being the owner thereof in fee since 1876; and that the defendant had ordered, directed, persuaded, and used all other reasonable and practicable means to prevent his wife from committing any of the offences charged in the indictment.

He then proceeded to read to the jury the first two sections of the Pub. Sts. c. 147, relating to the rights of married women in the management and control of their separate property, but was interrupted by the presiding judge, and directed not to read said statutes to the jury. Thereupon the counsel desisted from reading said statutes, but claimed the right to read them to the jury, and to have an exception to the refusal of the judge to allow him to do so. The judge thereupon ruled that the matter of reading said statutes to the jury was within the discretion of the court, and not a matter of exception.

It appeared in evidence for the defence, that the title in fee to the place was in the wife, as before stated, and that the parties had lived there as husband and wife ever since the purchase. The defendant offered evidence to show that, from time to time during five years prior to the finding of the indictment, he had ordered, directed, persuaded, and used all reasonable and practicable means in his power to prevent his wife from doing any of the acts charged, and that his wife told him the property was hers and she would do as she pleased. The judge excluded any evidence on this point at any time prior to January 1. The defendant then gave evidence tending to show those facts covering the time from January 1 to June, 1886.

At the close of the evidence, the defendant requested the judge to instruct the jury as follows: "1. A married woman who owns real estate in fee has as full control of the same during her life as she would have if single. She has a right to lease it for a

term of years, or to convey it by deed, which will be good and effectual as against her husband during her lifetime. She has a right to occupy it alone and expel her husband therefrom if it suits her pleasure or convenience, even though she occupies it as her dwelling-place. 2. Her husband has no legal right to expel her therefrom, and any force used by him for that purpose would be a criminal assault. 3. He has no right in disciplining his household to beat or strike her. 4. If, under the circumstances disclosed by the evidence, the jury are satisfied that he did not in fact permit and suffer such use as is charged in the indictment, he cannot be convicted."

The judge refused to give any instructions on the first two points, ruling that they were immaterial; gave the third; and further instructed the jury as follows:

"If a house owned by a married woman, while used by her and her husband and their family as their domicil, is kept and used by her as a house of ill-fame, or is kept and used by her for any of the purposes alleged in this indictment, her husband would be responsible for such use, if it was with his knowledge and consent, or with his participation, or if he permitted and suffered that use; but he would not be responsible for that use if it was without his knowledge or consent, or against his wishes, and in spite of every reasonable, lawful, and practicable effort on his part, exercised in good faith, to prevent such use."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. Brown*, for the defendant.

*H. C. Bliss*, Assistant Attorney General, for the Commonwealth.

FIELD, J. In offences like that charged in this indictment, there is a presumption of law that acts done by the wife in the immediate presence of her husband are done by her under coercion from him. This was originally a presumption in favor of the wife, but it is now also considered that there is a presumption against the husband that acts done by the wife in his immediate presence are done by his command or authority. In each case, it is a disputable presumption, and may be rebutted or contradicted by evidence, and this presumption has perhaps lost something of its force in modern times in consequence of

the rights given to married women by statute, and the diminished power of control which by law and usage husbands now have over the person and property of their wives. Still, it has recently been distinctly declared that a husband has the rightful power to prevent his wife from using, for the illegal sale of intoxicating liquors, a house owned by her as her separate property, and occupied by both as the home of the family. This must be equally true when the wife uses the house as a resort for prostitution. *Commonwealth* v. *Carroll*, 124 Mass. 30.

If the husband took no part in keeping the tenement for the purposes charged in the indictment, we think that the question of fact was whether he consented to his wife's keeping it for these purposes. If she kept it of her own free will, and without his consent and against his will, he could not be convicted. Whether he used all reasonable and practicable means to prevent her from keeping the tenement for these illegal purposes was relevant only upon the question of his consent or want of consent; and if in fact she acted of her own free will, and without his consent and against his will, he could not be convicted, although he had not used all reasonable and practicable means to control her conduct.

We are aware that, in some of the decisions, expressions have been used which indicate that it is a substantive part of the law, that, to excuse himself, the husband must show that he has used all reasonable and practicable means to restrain his wife; but, taking all the decisions together, we think it appears that his whole conduct, including what he did and said, and as well what he could reasonably have done and did not do, is admitted as evidence only for the purpose of proving or disproving his consent in fact to the acts done by his wife. *Commonwealth* v. *Putnam*, 4 Gray, 16. *Commonwealth* v. *Wood*, 97 Mass. 225. *Commonwealth* v. *Welch*, 97 Mass. 593. *Commonwealth* v. *Tryon*, 99 Mass. 442. *Commonwealth* v. *Cheney*, 114 Mass. 281. *Commonwealth* v. *Barry*, 115 Mass. 146. *Commonwealth* v. *Kennedy*, 119 Mass. 211. *Commonwealth* v. *Carroll*, *ubi supra*. *Commonwealth* v. *Pratt*, 126 Mass. 462.

If, then, the tenement was the separate property of the wife, this fact and the rights generally which belonged to the wife as owner of the tenement, and the knowledge or belief of the

husband, and the claim of the wife in reference to these rights, so far as there was evidence that the conduct of the husband might have been influenced thereby, were competent evidence for the jury upon the question of his consent.

The defendant's counsel had the right to argue to the jury all questions of law and fact involved in the case, subject to the ultimate decision of the presiding justice upon all questions of law. *Commonwealth* v. *Porter,* 10 Met. 263. Those provisions of the statutes which directly relate to the offence charged, counsel have always been permitted to read to the jury. Whether counsel should be permitted to read other provisions of the statutes to the jury, we think, was in the discretion of the presiding justice. The whole law which defined the nature and extent of the right which the husband had to control the conduct of his wife was not contained in the statutes, and the general rule is that it is within the discretion of the presiding justice whether counsel shall read to the jury statutory or common law from books, or shall state it orally, subject to the correction of the court. *Commonwealth* v. *Austin,* 7 Gray, 51.

The first two instructions requested apparently involved some questions of law which were not raised by the evidence, and upon which the presiding justice was not required to rule; and the instructions given were correct, unless the last clause be considered as substantially modifying the instructions that the defendant would be responsible if the use of the house by his wife was with his knowledge and consent, and would not be responsible if her use of it was without his knowledge or consent. We are not convinced that this clause was intended to modify the substance of the instruction previously given.

The time covered by the indictment was from and including January 1, 1886, to the day of finding the indictment, which was June 10, 1886. It appears that " the defendant offered evidence to show that, from time to time during five years prior to the finding of the indictment, he had ordered, directed, persuaded, and used all reasonable and practicable means in his power to prevent his wife from doing any of the acts charged, and that his wife told him the property was hers, and she would do as she pleased. The judge excluded any evidence on this point at any time prior to January 1."

The defendant was necessarily somewhat restricted in his defence, as he could not be permitted to testify to private conversations with his wife. The offence charged was a continuing one, and it might well be that he could produce but slight evidence that, during the time covered by the indictment, he had endeavored to prevent his wife from using the tenement for the illegal purposes charged; and yet he might have had ample proof that, within a reasonable time before this, he had in vain done, in good faith, all that he reasonably could to prevent her from using it as she did; and from this evidence the jury might have found that he continued to be of the same state of mind during the time covered by the indictment as before, and that his wife knew this, and continued to keep the premises in the same illegal manner, against his will.

When the question is of the state of mind of a person at or during a particular time, which can only be shown by acts or speech, evidence of what he said or did for a reasonable time before, if it tends to show a permanent or settled state of mind on the subject, has always been admitted. How far back a party shall be permitted to go, is largely in the discretion of the presiding justice; the only general rule is, that the evidence should be admitted, if, under all the facts proved, there can be a reasonable inference that the same state of mind continued to exist up to and during the particular time which is the subject of inquiry. Similar considerations apply to the knowledge or belief of the wife in regard to her husband's assent to or dissent from her course of conduct.

We think that the presiding justice erred in limiting the defendant to the time covered by the indictment; and, for this reason, the exceptions are sustained. *Potter* v. *Baldwin*, 133 Mass. 427.                                   *Exceptions sustained.*