## COMMONWEALTH vs. JAMES WALSH.

Bristol.    October 28, 1895. — December 31, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Intoxicating Liquors — Common Nuisance — Husband and Wife.*

If a married woman keeps in the house of her husband, or in the premises which are occupied and controlled by him, intoxicating liquors for sale in violation of law, whereby the tenement becomes under the statute a common nuisance, he will be liable for maintaining the nuisance if he has knowledge of the fact and of her intent, unless he uses reasonable means to prevent her from carrying out such intent.

COMPLAINT, for keeping and maintaining at Fall River a common nuisance, to wit, a tenement used for the illegal sale and illegal keeping of intoxicating liquors between July 1, 1894, and November 6, 1894. Trial in the Superior Court, before *Sheldon*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence that on November 4, 1894, three police officers went to a certain house in Fall River, and entered the lower story of the house and found in a closet off a kitchen sixteen bottles of lager beer, nine empty beer bottles, and a half-pint of wine; that in a room off the kitchen they found six men drinking strong beer at a table; that in the front part of the lower story there was a shop used for the sale of groceries and varieties, and the kitchen and other rooms were back of the shop and connected with it; that the officers found the wife of the defendant present; and that she said her husband was upstairs sick in bed; and that the liquors they were taking belonged to her.

One Pilling, who was one of the officers, testified that he had seen the defendant about the place three times between the dates charged in the complaint; that the defendant on one of these occasions was sitting in a room on the lower story of the house; that the defendant pleaded guilty to a charge of maintaining a common nuisance on these premises up to June 6, 1894; that during four or five weeks previously to November 6, 1894, men as well as women with pails under their shawls were

seen going to and coming from the premises on Sundays, in all twenty men and six or seven women; that the men were not intoxicated, and the witness could not tell whether or not there was anything in the pails; and that on the premises when the raid was made several lager beer and whiskey glasses were found. Two other police officers corroborated the above testimony as to what happened on the premises at the time of the raid.

Pilling further testified that the premises were on his beat, and he had been detailed to watch the place; that the defendant's wife was generally in the shop; that he had not seen the defendant exercising any authority in the shop or lower story since July 1; that one of the three times when he saw the defendant about the premises was in August; and that some time early in July he saw the defendant at a window in the house, and the defendant asked him why he did not raid some one else, and that this was one of the three times he saw the defendant about the premises.

The defendant testified that he and his wife owned the premises; that he lived upstairs in the house with his wife and family; that his wife occupied the shop and managed the business for a dry goods and variety store; that in no way had he any control over it, and he received no profits from it and took no part in it; that he was sick in bed at the time of the raid, and for three weeks previously; that part of the rest of the time from July 1 to the date of the complaint he was absent from the city; and that he knew nothing about intoxicating liquors being kept on the premises or being sold there. On cross-examination, he testified that the business in the store was run before the 1st of July as it was at that time and at the time of the raid in November; that his wife ran the business in the store for him; and that she had filed no certificate that she was doing business on her separate account.

The judge declined to give certain instructions requested by the defendant, and instructed the jury that, if the defendant's wife kept this tenement for the illegal sale or keeping of intoxicating liquors, and if the tenement was in her exclusive possession and control, yet if what she did was in her husband's presence there is a presumption that what she did was done under his coercion, and the same presumption even though he was not actually

present, if during the time named in the complaint he was so near that she was under his immediate influence and control; and if, as he stated in cross-examination, she kept the store for him, then it is the same as if he kept it himself, for what he did through her he is just as responsible as for what he did himself; that " if she kept in the house of her husband or in the premises which were occupied and controlled by her husband, and if the store was in her husband's house it would still be under his control, . . . intoxicating liquors for sale in violation of law, then he will be liable therefor under this complaint if he has knowledge of the fact and of her intent, unless he uses reasonable means to prevent her from carrying out such intent, and there is no evidence that this defendant has used or attempted to use such means, nor has he contended that he did so."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

The case was argued at the bar in October, 1895, and afterwards was submitted on the briefs to all the judges.

*C. R. Cummings,* (*J. T. Cummings* with him,) for the defendant.
*A. J. Jennings,* District Attorney, for the Commonwealth.

KNOWLTON, J. The only exception argued in this case is to an instruction of the presiding justice to the jury as follows: " If " the defendant's wife " kept in the house of her husband or in the premises which were occupied and controlled by her husband, and if the store was in her husband's house it would still be under his control, . . . intoxicating liquors for sale in violation of law, then he will be liable therefor under this complaint if he has knowledge of the fact and of her intent, unless he uses reasonable means to prevent her from carrying out such intent, and there is no evidence that this defendant has used or attempted to use such means, nor has he contended that he did so." This instruction was in accordance with the decisions of this court. *Commonwealth* v. *Wood,* 97 Mass. 225. *Commonwealth* v. *Barry,* 115 Mass. 146. *Commonwealth* v. *Kennedy,* 119 Mass. 211. *Commonwealth* v. *Carroll,* 124 Mass. 30.

Upon the hypothesis stated in the instruction, the defendant unquestionably kept the tenement. The tenement was unquestionably " used for the illegal keeping or sale of intoxicating liquor," and therefore under Pub. Sts. c. 101, § 6, was a common

nuisance. Even if the defendant was ignorant of the illegal use which was being made of his tenement, he was within the terms of the statute which prescribes punishment for a person who keeps a common nuisance. There is a moral, if not a legal obligation, upon one in the occupation of real estate to see that it is not so kept or used as to be a common nuisance; and if this statute were construed like other statutes in regard to the unlawful sale of intoxicating liquor, the keeper of a tenement which was in fact under the law a common nuisance would be punished, whether he knew of the use which made it a nuisance or not.

But if we construe this statute more favorably to persons accused, and hold that an intent to violate the law must be proved, and that a keeper of a tenement is not liable criminally if, while he uses due diligence, his house is a common nuisance by reason of its use for the unlawful sale of intoxicating liquors by a boarder or lodger without his knowledge, it does not relieve the defendant in this case. The question whether a keeper of a tenement is liable criminally for individual acts of unlawful sale of liquors made in his house by his wife, from her own property, is very different from the question whether he is liable for continuing to keep the common nuisance if he knows of the unlawful use of his property and takes no measures to prevent it. Discussions of the question how far a husband is liable criminally for unlawful acts done by his wife in his actual or constructive presence have little relevancy to the question last above stated. When the tenement is the sole and separate property of the wife, and she has such legal control of it as its ownership gives her, it is a question of more difficulty whether he or she keeps it within the meaning of the statute. Even in such a case it has been held that, if the building is their dwelling-house, the husband so far participates in keeping it for an illegal purpose as to make him subject to punishment. *Commonwealth* v. *Wood*, 97 Mass. 225. *Commonwealth* v. *Carroll*, 124 Mass. 30.

The defendant relies upon *Commonwealth* v. *Hill*, 145 Mass. 305. The decision in that case is merely that certain evidence was wrongly excluded, and is entirely consistent with the instruction given in the present case. The discussion in the opinion relates to facts very different from those assumed in the

instruction before us. The title to the real estate in that case was in the defendant's wife, and the evidence tended to show that the unlawful business was carried on by her on her own account, and the defendant offered evidence that he had " used all reasonable and practicable means in his power to prevent his wife from doing any of the acts charged, and that his wife told him the property was hers, and she would do as she pleased." So far as the language of the opinion tends to modify anything that has been said in previous decisions, it relates to cases where· the punishable act is done by the wife, and the question is whether the husband is liable by reason of coercion or participation, while in the case now before us the husband, and not the wife, was confessedly the keeper of the tenement which was so used as to be a nuisance.

The criminal intent involved in the commission of this crime is the intent to keep the tenement, knowing and suffering it to be a common nuisance. It is immaterial who does the other unlawful acts which make it a common nuisance. The keeper's knowledge that it is a nuisance, unaccompanied by active efforts to prevent its being offensive in the eye of the law, is guilty knowledge, which makes him punishable under the express terms of the statute for keeping it.

In the opinion of a majority of the court the entry must be,

*Exceptions overruled.*