## Coolman v. The State.

[No. 20,289.  Filed November 29, 1904.]

TRIAL.—*Separation of Witnesses.*—*Discretion of Court.*—The separation of witnesses is a matter discretionary with the court, and it is not improper to allow the prosecuting witness to remain to assist the prosecuting attorney with suggestions and information.  *p. 504.*

SAME.—*Instructions Asked Covered by Those Given.*—It is not error to refuse to give an instruction asked which is covered by instructions given in the cause.  *pp. 505, 506.*

SAME.—*Instructions.*—*Reasonable Doubt.*—Where the court has charged the jury on the question of reasonable doubt generally, but not as to their duty when there is a reasonable doubt generally as to which of two or more degrees of an offense defendant is guilty, it is error for the court to refuse to charge that "he must be convicted of the lowest degree only."  *p. 506.*

SAME.—*Instruction Not Applicable to Evidence.*—An instruction containing a correct statement of the law should be refused if not applicable to the evidence.  *p. 507.*

SAME.—*Malice Implied from Use of Deadly Weapon.*—An instruction that "malice is not implied from the use of a deadly weapon, and the fact' that defendant used a deadly weapon does not cast upon the defendant the burden of proof on this point; and if, upon considering the whole evidence in the case, there is reasonable doubt whether malice entered into the act, you must acquit the defendant," is properly refused, since the intentional use of a deadly weapon in such manner as to cause death authorizes the presumption that the defendant acted maliciously, unless such use was in necessary self-defense, or upon a sudden heat, occasioned by adequate provocation.  *p. 507.*

SAME.—*Husband's Right of Control of Premises.*—A husband and stepfather, being in possession and control of the home and farm, may exclude a person therefrom, though such home and farm are owned by the wife and stepdaughter as tenants in common, and even though such person come as suitor or visitor to such stepdaughter, and it was not

necessary for the State to prove that such stepdaughter had relinquished any of her rights in the premises.  *p. 509.*

TRIAL.—*Intention Inferred from Act.—Instruction.*—An instruction that "if you find from all the evidence beyond a reasonable doubt that defendant did shoot and kill S., using a deadly weapon in such manner as was likely to and did produce death, the purpose on the part of defendant to kill may be inferred from the act itself.  And if you should further find from all the evidence, beyond a reasonable doubt, that the killing was done purposely, without sufficient justification, legal excuse, or reasonable provocation, then malice may also be inferred from such act," is a proper statement of the law.  *pp. 508, 509.*

SAME.—*Communication With Jury After Retiring.*—It is improper and reversible error for the judge or bailiff to make any communication to the jury, after retirement, except in open court, and in the presence of the accused or his counsel.  *pp. 509, 510.*

From Whitley Circuit Court; *J. W. Adair*, Judge.

Prosecution by the State of Indiana against Claude L. Coolman for murder.  From a judgment on a verdict of murder in the second degree and a sentence of imprisonment for life, defendant appeals.  *Reversed.*

*B. E. Gates, D. V. Whiteleather* and *Thomas Gallivan*, for appellant.

*C. W. Miller*, Attorney-General, *W. H. Kessinger*, Prosecuting Attorney, and *O. E. Grant*, for appellee.

DOWLING, J.—The appellant was duly charged upon indictment in the Whitley Circuit Court with murder in the first degree.  He pleaded not guilty, was tried by a jury, and was found guilty of murder in the second degree.  A motion for a new trial was overruled, and judgment was rendered on the verdict.  The refusal of the court to grant the appellant a new trial is the error relied on for a reversal of the judgment.  The reasons for a new trial discussed by counsel for appellant are the overruling of a motion of the appellant to exclude the prosecuting witness from the court room while the other witnesses were being examined, the giving of certain instructions, the refusal to give others tendered by the appellant, the incompetency of one of the jurors trying the cause, the alleged misconduct of the bailiff in charge of the jury in

making improper communications to them during their deliberations, and the supposed misconduct of the jury in conversing with the bailiff in regard to the consequences of their failure to agree.

Whether the witnesses should be separated or not was a matter entirely within the discretion of the court. *Southey* v. *Nash* (1837), 7 C. & P. 632; *Sanders* v. *Johnson* (1841), 6 Blackf. 50, 36 Am. Dec. 564; *Johnson* v. *State* (1851), 2 Ind. 652; 8 Ency. Pl. and Pr., 92. Such separation is not required by statute, nor by any rule of the common law. When asked for, it is granted, not of right, but as a favor. *Porter* v. *State* (1851), 2 Ind. 435. When an order for such separation of witnesses is made in a criminal cause, it is proper to except the prosecuting witness, and to permit such witness to be present during the examination of the other witnesses. The information which he may furnish to the prosecuting attorney during the trial may be necessary or advantageous to the State, and the same reasons which make it proper for the parties in a civil action, although witnesses, to remain in the court room while the evidence in the cause is being heard, justify the court in permitting a witness designated by the State to be present to aid the prosecuting attorney by suggestion and information during the trial of a criminal cause. To exclude the prosecuting witness would, in many cases, place the State at great disadvantage, by leaving its representative without aid from anyone having personal knowledge of the case.

Instruction numbered two tendered by the appellant related to the doctrine of self-defense by one originally upon the premises of another without right, but who was attempting in good faith to withdraw from the place, and while so leaving was violently assaulted by his adversary under circumstances justifying a belief that the person so assailed was in danger of great bodily harm. The instruction probably stated the law correctly, but its substance was

contained in other instructions given by the court, and especially by instruction numbered three tendered by the appellant, and instructions numbered twelve, thirteen, and fourteen given at the request of the State.

Instruction numbered five tendered by appellant was a statement of the law concerning reasonable doubt—a subject which had been fully and carefully considered in other instructions given by the court. It did contain the additional statement that, "when there is a reasonable doubt in which of two or more degrees of an offense he is guilty, he must be convicted of the lowest degree only." The sentence just quoted was stricken out by the court, and the instruction was given as so modified. The clause above set out was a correct declaration of a statutory rule of law. §1893 Burns 1901; *Newport* v. *State* (1895), 140 Ind. 299. In other instructions the court had clearly advised the jury in regard to the three degrees of homicide included in the charge of murder in the first degree, and had told them what proof was necessary to establish each degree of the felony. But it had not, in terms, instructed them concerning their duty in case they were satisfied of the guilt of the defendant of some degree of homicide, but were in doubt as to which degree. Under the circumstances, we are of the opinion that the instruction should have been given without modification.

Instruction numbered eight was not applicable to the evidence. It proceeded upon the supposition that there had been a combat between the appellant and the deceased, in which the appellant was the aggressor, but, from which having withdrawn, he was pursued, and unlawfully and violently assaulted by the deceased. There was no evidence of any combat, and it was not necessary to state the law governing such a case. Besides, so far as this instruction declared the law correctly, its substance was given in instruction numbered three requested by appellant, and in-

structions numbered twelve, thirteen, and fourteen given at the instance of the State.

Instructions numbered twelve, thirteen, and seventeen, asked for by appellant, attempted, at great length, to set forth the law of self-defense. This doctrine was fully and correctly stated in instructions numbered seven, nine, and ten tendered by appellant and given by the court, and the instructions so given were quite as minute in their details and as favorable as the appellant had a right to demand. The iteration and reiteration of legal propositions in instructions is neither necessary nor desirable. Such method is calculated to create an impression that the court desires to emphasize and give especial prominence to the subject so treated, with the possible result that the jury are led to believe that on the point so emphasized the court is seeking to indicate its own views of the legal effect and weight of the evidence.

Instruction numbered eighteen tendered by the appellant and refused by the court was as follows: "Malice is not implied from the use of a deadly weapon, and the fact that the defendant used a deadly weapon does not cast upon the defendant the burden of proof on this point; and if, upon considering the whole evidence in the case, there is reasonable doubt whether malice entered into the act, you must acquit the defendant of murder." This instruction is directly at variance with the law as declared by this court. It is true that malice is not *conclusively* presumed from the use of a deadly weapon, because there may be cases where the use of such a weapon is, or seems to be, necessary, and is therefore lawful. But malice may be inferred from the intentional use of a deadly weapon in such manner as to cause death. *McDermott* v. *State* (1883), 89 Ind. 187; *Kingen* v. *State* (1874), 45 Ind. 518; *Miller* v. *State* (1871), 37 Ind. 432; *Clem* v. *State* (1869), 31 Ind. 480; *Smith* v. *State* (1895), 142 Ind. 288; *Bridge-*

*water* v. *State*, 153 Ind. 560, 563. The court did not err in refusing to give the instruction.

Instruction numbered nineteen tendered by appellant, reads thus: "The presumption is that the owner of property is entitled to the possession of the same until the contrary is shown. The court therefore instructs you, gentlemen of the jury, that if you find from all the evidence in this case that the real estate upon which the alleged crime was committed was owned by Emma E. Stallsmith and her minor daughter by a former marriage, Pearl Shrader, as tenants in common, and that the said Pearl Shrader lived and resided in the dwelling thereon, and that the defendant was upon said premises at the invitation and with the consent of the said Pearl Shrader, unless the State has proved beyond a reasonable doubt that the said Pearl Shrader, at the time she invited or consented to the defendant entering upon said premises, had in legal manner released or relinquished her right so to permit the defendant to enter and be upon said premises, then I charge you that you can not find that the defendant was at a place where he had no right to be."

The fact that Pearl Shrader, the minor stepdaughter of the deceased, owned an interest in the land on which the deceased resided with his wife and family, did not give the stepdaughter the right to license or authorize the appellant to remain upon said land after the deceased, who was the responsible head of the family, ordered him to leave. It was not incumbent upon the State to prove that the stepdaughter had relinquished any of her rights in the premises. If her stepfather was in possession and had the general control of the premises as husband and father, while he was recognized as the head of the family he had the right to exclude the appellant therefrom, even if the appellant came there as a visitor or suitor of the stepdaughter. *Commonwealth* v. *Wood* (1867), 97 Mass. 225; *Commonwealth* v. *Carroll* (1878), 124 Mass. 30; *Commonwealth*

v. *Hill* (1887), 145 Mass. 305, 14 N. E. 124; *Elijah* v. *Taylor* (1865), 37 Ill. 247; *Davis* v. *Watts* (1883), 90 Ind. 372.

Counsel for appellant next complain of the seventh, twelfth, thirteenth, fourteenth, and fifteenth instructions which were given at the request of the State. The seventh was as follows: "If you should find from all the evidence in the case beyond a reasonable doubt that the defendant did shoot and kill Frank H. Stallsmith, using a deadly weapon in such manner as was likely to and did produce death, the purpose on the part of the defendant to kill may be inferred from the act itself. And if you should further find from all the evidence, beyond a reasonable doubt, that the killing was done purposely, without sufficient justification, legal excuse, or reasonable provocation, then malice may also be inferred from such act." We discover no error in this instruction.

The twelfth, thirteenth, fourteenth, and fifteenth instructions, given at the instance of the State, related to the authority of the deceased to order the appellant from the premises, and to compel his departure therefrom. As already stated in this opinion, if the deceased, as the head of the household, was living on the premises with his wife and stepdaughter, who were the owners of the farm, he had the right to say whether the appellant should come upon such lands as a visitor, or should remain after entering thereon. No question of the title to or ownership of the land was involved in the case, and under the proof such ownership had nothing to do with the rights of the parties. The instructions objected to were in harmony with this view of the law, and we find no error in them.

After the jury had retired to deliberate on their verdict, in the absence of the defendant and his counsel, and out of the presence and hearing of the judge of the court, the foreman of the jury said to the bailiff, who had been called to the door of the room in which the jury were kept: "We

can't agree upon a verdict, and have agreed to disagree."
The bailiff answered that he would go and see the judge.
After doing so, he returned to the door of the room and
said to the foreman: "The judge says that he can not re-
ceive a verdict of disagreement; that he is going out to his
cottage at Shriner lake, and will not be back until between
6 and 7 o'clock; and that if you agree before that time he
will receive the verdict when he returns, and if you have
not agreed at that time he will receive your verdict when
you do agree." The foreman then said to the bailiff:
"But we must agree to disagree." To this, the bailiff re-
plied: "O, pshaw, Henry!" and closed the door. This is
the statement contained in the counter-affidavit of the bail-
iff, filed on behalf of the State, and presents in its most
favorable light for the State all that took place between the
bailiff and the foreman of the jury. It was not proper for
the judge to make any communication to the jury after
they had retired, except in open court, and in the presence
of the defendant or his counsel. *Hall* v. *State* (1856), 8
Ind. 439; *Quinn* v. *State* (1892), 130 Ind. 340; *People*
v. *Knapp* (1879), 42 Mich. 267, 3 N. W. 927, 36 Am.
Rep. 438. The conduct of the bailiff in holding a conver-
sation with the foreman, in which he told the latter that
the judge could not receive a verdict of disagreement; that
the judge was going away to be absent until 6 or 7 o'clock,
and would, on his return, receive the verdict if they had
agreed, otherwise he would receive it when they did agree;
the remark of the foreman, "But we must agree to dis-
agree"; and the response of the bailiff. "Oh, pshaw,
Henry!"—were grossly improper. *Rickard* v. *State*
(1881), 74 Ind. 275; *People* v. *Knapp, supra.* Their
prejudicial effect on the minds of the jury may be conclu-
sively presumed. The foreman had reported that the jury
were unable to agree. The jury had been deliberating for
twenty hours when this conversation took place. Within
two hours thereafter, the jurors changed their views, a

verdict was agreed upon, and the punishment of the defendant was fixed at imprisonment for life.

We need not speculate in regard to the effect of the communication so made. The statute expressly prohibits the bailiff from speaking to the jury unless by order of the court, or to ask them whether they have agreed upon their verdict. §1897 Burns 1901. In the case before us there was a flagrant violation of this rule, which was speedily followed by a startling change of opinion on the part of the jury. The statement of the bailiff to the foreman that the jury could not agree to disagree; that the judge would return between 6 and 7 o'clock to receive the verdict if they did agree, and if they had not he would receive it when they did agree—may well have been understood as a warning from the court that no disagreement would be permitted, and that he would keep them together until they did agree. Coming from the judge himself in the court room, in the presence of the defendant and his counsel, such a statement would have been improper. Made by a bailiff, at the door of the jury room, in the absence of court, defendant, and counsel, and embellished by a contemptuous reference to the possibility of an honest disagreement, it can not be too severely condemned.

In view of the disposition which must be made of the case, we do not deem it proper to decide whether a new trial should have been granted upon the evidence. And as the judgment must be reversed because of the refusal of the court to give instruction numbered five tendered by the appellant, and because of the misconduct of the bailiff, we need not express an opinion upon any other questions, as they may not arise upon another trial.

Judgment reversed, with instructions to sustain the motion for a new trial for the reasons herein stated, and for further procedings not inconsistent with this opinion.