JOHN B. ALFRED *v.* SUSAN B. ALFRED AND S. DWIGHT ALFRED.

February Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 8, 1913.

*Husband and Wife—Property Rights—Real Estate Purchased for a Home by Agreement and Paid for by Means of Both —Status—Rights of Husband and Wife Therein.*

Where a husband and wife purchased a farm and the personal property thereon, taking the title in her name, for the purpose of providing them a home and affording them a means of livelihood in their old age, and on the understanding that both should contribute of their labor and means to pay therefor, which they did, both are entitled to a home thereon and to support therefrom, if adequate, and the husband has the right to manage and control the property only to that end, and the rents and profits are first charged with the support of husband and wife.

The husband is the head of the family, and does not lose that status because the family resides on a farm or in a house owned by the wife.

In chancery appeals this Court sits as a court of error only, and will consider no question that the record does not show was raised below.

APPEAL IN CHANCERY. Heard on the pleadings and master's report at the September Term, 1912, Franklin County,

*Fish,* Chancellor. Decree for the orator. The defendant appealed. The opinion states the case.

*C. G. Austin & Sons* for the orator.

*Elmer Johnson* for the defendant.

POWERS, J. This is a bill in chancery brought by a husband to establish his rights in certain property standing in the name of his wife.

In 1903, John Alfred and his wife, Susan, bought a place in the town of St. Albans, known as the Lavender Farm, together with the stock, tools and personal property thereon. The purchase price was fifty-five hundred dollars, of which, five hundred dollars of Alfred's money was paid down. The deed was taken to Susan. Alfred was a deputy sheriff and jailer, and earned in this service about nine hundred dollars a year. From his earnings he contributed to the support of the family, the running expenses of the farm, and the payment of debts. The wife, Susan, and the son, Dwight, who lived with his parents on the place, contributed their services; and from these various sources, payments were made on the mortgage resting on the farm. A small building on the place burned, and the insurance money was applied on the mortgage; Mrs. Alfred came into possession of about three thousand dollars by inheritance, and a part of this was paid on the mortgage, and a part was applied on obligations which grew out of the management of the farm and support of the family. The avails of the dairy were applied in the same way. The result is that the mortgage has been reduced to sixteen hundred dollars.

This property was bought, according to the finding of the master, for the purpose of providing and establishing a home for Mr. and Mrs. Alfred, where they could live together, and which would afford a means of livelihood for them in their old age; and it was understood between them that both should contribute of their labor and means to accomplish that end. The question who should manage the farm soon began to make trouble. They did not disagree about matters in general, but over the control and management of the farm and the business connected therewith they were in endless dispute. Finally, the

wife, with the assistance of the son who sided with her, crowded the husband out of control, compelled him to relinquish his seat at the head of the table, and shut him out of all management of the property—though he was allowed to board and room there.    The situation became so unbearable that Mr. Alfred withdrew from the premises and brought this bill.    Aside from this question of management and control, there was no reason why Mr. and Mrs. Alfred could not live together, and nothing to warrant their living apart.

It was adjudged by the court of chancery that the right of the orator in the farm was that of a husband in his wife's non-separate real estate; that he was entitled to the usufruct, the rents, products and profits thereof during coverture; that he had the right of possession and control of the property, and could convey, lease or encumber his interest in it, aside from the homestead, by mortgage for the period of his life—all subject to the limitation that he could not do anything with it to the prejudice of the ulterior rights of the wife; and it was decreed by that court that the control and management of the farm be restored to the orator, and the possession and enjoyment of the same be restored to the husband and wife for a home, and that the defendants be enjoined from interfering with the orator's control and management, and from selling or encumbering the property.

We need not stop to consider whether the court's determination of the orator's rights would be an accurate statement thereof if this farm stood like an ordinary piece of real estate belonging to the wife.    For this farm does not stand in that way.    It was bought for a specific purpose, and with a definite understanding as to how and for what it was to be used.    It became, therefore, impressed with a character quite different from that of land merely deeded to the wife.    The rights of both the husband and the wife were modified by their agreement regarding the purchase and use of the property.    The husband was the head of the family, and a husband does not lose his character as such, though the family resides on a farm or in a house owned by the wife.    *Com.* v. *Wood*, 97 Mass. 229.    Nor was there anything in the understanding under which the property was acquired which affected Mr. Alfred's status in that household.    But his right to rent or mortgage the place was

limited by the agreement. It was bought for a home for both. To that end, both had contributed of their labor and of their money. Both were entitled to a home there, and to support out of the place, if it was adequate to provide it. A court of equity will, in these circumstances, watch over that home, and protect it for both against the unfair usurpations of either. The orator's rights, then, were to manage and control the property for a home for himself and wife and for their support thereon. He could not imperil her occupancy and enjoyment of the property according to the arrangement under which her money had gone into it, by any lease or mortgage thereof, without her consent. The rents and profits were first charged with the support of the parties to the arrangement, and the husband's rights therein are correspondingly modified. To this extent the adjudication of the court of chancery is modified, but the decree rendered was correct.

The defendant complains that the wife's equity to a settlement was not protected by the decree. Of this, it is enough to say, that it does not appear that application to that end was made below; and this Court sits in error only. If there is ever a case so plain that the court of chancery should act in that behalf of its own motion, certainly this is not such a case, for, in addition to the fact that the character of the property is as above stated, there is nothing to show that the husband is either unable or unwilling properly to care for and support the wife. On the contrary, it fairly appears that, with the question of authority settled, the parties can live together in peace and carry out in all respects the purposes for which the property was acquired.

*Affirmed and remanded.*