# JUNE TERM, 1921.*

---

## PEOPLE v. SYBISLOO.

1. INTOXICATING LIQUORS—CRIMINAL LAW—ADMISSIONS — APPEAL AND ERROR.

In a prosecution of a husband for violation of the liquor law, where the husband and wife were jointly charged and the wife had pleaded guilty, admission of defendant's counsel that there was no claim but that the wife had been conducting unlawful liquor business in the house renders it unnecessary for the Supreme Court, on error, to consider assignments based on errors in the admission of testimony or sufficiency of the proofs to establish the fact that such illegal business was being conducted in the home occupied by defendant and his wife on the occasion charged.

2. SAME — HUSBAND AND WIFE — WHEN HUSBAND LIABLE FOR WIFE'S CRIMINAL ACT—MALUM PROHIBITUM.

The husband is liable for his wife's criminal acts committed by his bidding or in his presence and under his coercion; and likewise where she, in his presence and with his knowledge, commits an act not *malum in se*, he may be found guilty, as where, with the husband's knowledge or consent, the wife sells intoxicating liquors contrary to statute.

3. SAME—HUSBAND HEAD OF HOME.

The rule holding the husband guilty rests not on the presumption of coercion of the wife by the husband, but on the authority of the husband as the head of the household to control its affairs, and his duty to use all reasonable means to prevent the wife from using the home for a business or purpose prohibited by the statute.

Error to Berrien; White (Charles E.), J.    Sub-

---

mitted July 15, 1921.    (Docket No. 124.)    Decided
October 3, 1921.

John Sybisloo was convicted of violating the liquor
law, and sentenced to imprisonment for not less than
6 months nor more than 1 year in the State prison at
Jackson.    Affirmed.

*John J. Sterling,* for appellant.

*Merlin Wiley,* Attorney General, and *Charles W.
Gore,* Prosecuting Attorney, for the people.

SHARPE, J.    The defendant and his wife, Anna
Sybisloo, were jointly charged with a violation of sec-
tion 2 of Act No. 338 of the Public Acts of 1917, as
amended by Act No. 53 of the Public Acts of 1919.
The wife pleaded guilty.    The defendant was con-
victed and sentenced.    He now seeks review of his
conviction by writ of error.    It appears by the proofs
that the sheriff, George C. Bridgman, being suspicious
that the defendant and his wife were illegally manu-
facturing and disposing of intoxicants, procured one
Robert Chandler to go to their home and get some
liquor; that he marked the money which was paid
therefor; that he then got a warrant to search the
premises; that, accompanied by Deputy Sheriff Frank
Glover, he made such search; that he found the two
defendants and three men sitting around a table on
which was a glass and bottle; that Glover found a
still for the manufacture of whisky, a barrel of mash
and a considerable quantity of liquor in the basement;
that Mrs. Sybisloo, on request, produced her pocket-
book, in which some of the marked bills were found.
The trial court in his charge, after stating the facts
claimed by the prosecution, said:

"So that there is no serious controversy in this
case but what the wife was conducting business, this

unlawful business that has been charged in this information, in that house.    I don't understand Mr. Whitney makes any claim—

"*Mr. Whitney* (Interposing) : None whatever.

"*The Court* (Continuing) :    To the contrary, so that the real question in this case for you to determine is whether or not, under the facts as they were developed by the evidence in this case, this respondent is liable for these unlawful acts which the evidence disclosed were being carried on in that house."

1. In view of the admission by counsel, we do not feel called upon to consider the assignments based on errors in the admission of testimony or on the sufficiency of the proofs to establish the fact that a business in violation of the statute was being conducted at the home occupied by the defendant and his wife on the occasion charged.

2. The jury were instructed:

"If the house was owned by respondent's wife, but was used by respondent and his wife as their domicile or home, and if respondent's wife committed in said house any of the unlawful acts charged in the information filed in this case, the husband (that is this respondent) would be responsible for such unlawful act or acts if committed with his knowledge or consent, or with his participation, or if he permitted and suffered the commission of such unlawful act or acts by the wife; but he would not be responsible for the commission of such unlawful act or acts by the wife if committed without his knowledge or consent or against his wishes and in spite of every reasonable, lawful and practicable effort on his part, exercised in good faith, to prevent the commission of such act or acts by the wife.    That is the rule of law that should aid you in determining whether or not under the facts in this case this respondent is liable for the illegal and unlawful acts committed in the house by the wife."

We think this instruction correctly stated the law applicable to the facts here presented.    The house had

been purchased under contract, the wife being named as the vendee therein. All of the payments had been made by the husband. The wife testified that a woman living in Chicago brought the still to her and taught her how to make whisky with it; that before she got it her husband worked steadily, but was then working but two days a week; that defendant was never in the cellar and did not know that the still was there. A boarder, Henry Losinski, testified that he saw the still in the basement; that on two occasions he heard the husband and wife talking about it; that defendant said to his wife, "I don't like this business." Agnes Holtz, a neighbor, testified that when at their house the defendant said: "She (his wife) shouldn't do it, he was afraid he would get in some trouble." The defendant testified he knew that a woman brought the still to his home; that, while the house is heated with a furnace, he did not attend to it while the still was in the basement, though he did both before and after, as his wife "don't want me to go to the furnace for fear I would throw that out."

In 21 Cyc. p. 1147, it is said:

"The husband is the head of the family and as such has the general right at common law to regulate the household, its expenses and its visitors, and to exercise the general control of the family management."

The offense here charged is not *malum in se*. It does not involve an act which from its very nature is criminal, such as murder, theft, arson and the like. It is this class of cases to which the authorities cited by counsel for the defendant apply. *People* v. *Knapp*, 26 Mich. 112; *People* v. *Chapman*, 62 Mich. 280; *People* v. *Fay*, 70 Mich. 421. The charge against the defendant is *malum prohibitum*. It becomes a crime only because its commission is expressly forbidden by positive law. There is a well-recognized distinction between such acts. Under the latter, it seems settled

that criminal intent is not a necessary element of the offense. In *People* v. *Werner,* 174 N. Y. 132 (66 N. E. 667), it was said:

"The law on that subject seems to be that an act *malum prohibitum* is not excused by ignorance or a mistake of fact when a specific act is made by law indictable irrespective of the defendant's motive or intent. * * * The general rule that the criminal intention is the essence of the crime does not apply to such prohibited acts."

In *People* v. *Roby,* 52 Mich. 577, 579, COOLEY, C. J., said:

"Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

The rule applicable to the facts here presented is well stated in 21 Cyc. p. 1354:

"The husband is liable for his wife's criminal acts committed by his bidding, or in his presence and under his coercion. Likewise where she, in his presence and with his knowledge, commits an act not *malum in se,* he may be found guilty, as where with the husband's knowledge or consent, the wife sells intoxicating liquors contrary to statute."

In *Commonwealth* v. *Barry,* 115 Mass. 146, the facts were quite similar to those here presented. The trial court charged that the defendant was liable if the jury found that his wife kept the liquor in the presence of the defendant with intent to sell it and the husband had knowledge thereof and did not use reasonable means to prevent her from doing so. The court said:

"The statutes which give to a married woman the right to carry on any trade or business on her sole

and separate account, do not deprive a husband of his common law right to regulate and control his own household. He has the power to prevent his wife from using the house for an illegal business or purpose. If he permits her to use it for the illegal purpose of keeping intoxicating liquors for the purpose of sale, he becomes a participator in the misdemeanor, and is liable to indictment or complaint for it. And the fact that she was carrying on the business on her own account, and has filed a certificate to that effect under the statute, does not release him from this liability."

See, also, *Commonwealth* v. *Walsh*, 165 Mass. 62 (42 N. E. 500); *State* v. *Rozum*, 8 N. D. 548 (80 N. W. 477); *Wayne County Com'rs* v. *Keller*, 20 How. Prac. (N. Y.) 280.

The rule as stated rests, not on the presumption of coercion of the wife by the husband, but on the authority of the husband as the head of the household to control its affairs and his duty to use all reasonable means to prevent his wife from using the home for a business or purpose prohibited by the statute.

The judgment is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.