Larry Allen **MILLER**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 17A04–9407–CR–268.

Court of Appeals of Indiana, Fourth District.

April 3, 1995.

Transfer Denied May 25, 1995.

Susan K. Carpenter, Public Defender, Teresa D. Harper, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE FACTS*

Larry Allen Miller appeals from his convictions for two counts of burglary as a class B felony [1] and two counts of theft as a class D felony.[2] We affirm.

*ISSUES*

1. Whether the trial court erred in allowing the victim to sit at counsel's table with the deputy prosecutor throughout trial when the defense had sought an order for separation of witnesses after the victim had testified.

2. Whether the trial court erred in failing to conduct a hearing on Miller's ability to pay restitution to the victim.

*FACTS*

In 1992, Larry Chapman lived in a mobile home in rural DeKalb County. On the mornings of October 24, and December 24, 1992, Mr. Chapman returned to his home to find the front door had been pried open and its interior ransacked; numerous personal items were missing. Both times Chapman notified police. A friend informed Chapman that his missing belongings might be at Larry Miller's. When Chapman went to the apartment where Miller lived, he saw some of his missing possessions. Chapman then visited the police and told them what he had seen.

Miller was interviewed by investigating law enforcement officers. After waiving his *Miranda* rights, Miller confessed that he had committed the two burglaries. His tape-recorded confession detailed items taken on each occasion and declared he knew the whereabouts of the items.

Miller was charged by information with two counts of burglary as a class B felony and two counts of theft as a class D felony. He was tried by jury on February 2, 1994. He was found guilty on all four counts. At the sentencing hearing on March 21, 1994, the trial court enumerated a series of aggravating factors which it considered and also recognized one mitigating factor. The court ordered Miller to serve eight years (two less than the presumptive sentence recommended by the probation department in its pre-sentencing report) for each burglary and one and one-half years (the presumptive sentence) for each theft, with all sentences to run concurrently. In addition, the court ordered Miller to pay $846 in restitution to the victim; this sum represented Chapman's estimate of the value of stolen items which were not recovered and the expense of repairing the damage to his residence.

*DISCUSSION AND DECISION*

1. *Victim at Counsel Table*

At Miller's trial, Chapman was the first witness to testify. Thereafter, defense counsel requested Chapman be kept available to be called as a witness by the defense and further sought a separation of witnesses order to include Chapman. The court stated that the deputy prosecutor was entitled to have someone sitting at counsel table to assist him throughout the case, and the prosecution responded by selecting Chapman as that person.

Miller claims the trial court erred in allowing Chapman, the victim of the burglaries, to remain at the State's counsel table after his request for a separation of witnesses. Miller asserts that because defense counsel informed the trial court that it might call Chapman as a witness and "the State made no showing why Chapman was the appropriate witness" to be the witness kept at State counsel's table "to assist in the presentation of the case," when the defense called Chap-

1. Ind.Code 35–43–2–1.

2. I.C. 35–43–4–2(a).

man to testify "after having sat through the entire trial and heard all other witnesses testify, ... error which prejudiced Miller" resulted. Miller's Brief at 9.

In his argument to support this claim of error, Miller first "concedes that the separation of witnesses has long been a matter of trial court discretion," citing *Coolman v. State* (1904), 163 Ind. 503, 72 N.E. 568, and *Romary v. State* (1945), 223 Ind. 667, 64 N.E.2d 22. Miller's Brief at 11. In both cases, the supreme court affirmed such a determination as being within the discretion of the trial court. However, what Miller has failed to acknowledge is the further guidance of *Coolman* on whether "the overruling of a motion of the appellant to exclude the prosecuting witness from the courtroom while the other witnesses were being examined" was error. *Coolman, supra* at 568, 72 N.E. 568. Specifically, the court declared that separation of witnesses is

> not required by statute, nor by any rule of the common law. When asked for, it is granted, not of right, but as a favor. When an order for such separation of witnesses is made in a criminal cause, it is proper to except the prosecuting witness, and to permit such witness to be present during the examination of the other witnesses. The information which he may furnish to the prosecuting attorney during the trial may be necessary or advantageous to the state, and the same reasons which made it proper for the parties in a civil action, although witnesses, to remain in the courtroom while the evidence in the cause is being heard, justify the court in permitting a witness designated by the state to be present to aid the prosecuting attorney by suggestion and information during the trial of a criminal cause. To exclude the prosecuting witness would in many cases place the state at great disadvantage, by leaving its representative with-

out aid from any one having personal knowledge of the case.

*Id.* at 568–69, 72 N.E. 568 (citations omitted). *Romary* also states that an order for separation of witnesses may properly "except the prosecuting witness, and ... permit such witness to be present during the examination of other witnesses." *Romary, supra* 64 N.E.2d at 24–25. In both cases, our supreme court found no error in the trial court's not having excluded the prosecuting witness from the courtroom in a separation of witnesses order.

Miller then refers to the "general exception ... to an order separating witnesses" and describes Indiana's longstanding recognition "that both parties have the right to have the assistance of one person in the courtroom." Miller's Brief at 11. Miller's cites *Averhart v. State* (1993), Ind., 614 N.E.2d 924, where no error was found when appellant's trial lawyer sat at State's counsel table during the post-conviction proceedings, as showing the purpose of allowing the witness' presence. Miller quotes:

> [A]ppellant was directly attacking his trial counsel in his post-conviction relief petition. It is obvious that counsel would be the person designated by the State to remain in the courtroom to aid in the presentation of the State's evidence. The post-conviction court did not err in permitting appellant's trial counsel to remain at the State's table during the entire proceeding.

*Id.* at 928. As best we can follow Miller's reasoning, he suggests that *Averhart* limits such a role for the witness to when the defendant "was directly attacking" that witness. Miller then proceeds to discuss an Idaho case, *State v. Shaw* (1975), 96 Idaho 897, 539 P.2d 250, where the presence of the prosecuting witness—the former wife in a prosecution for nonsupport of dependent children—required a showing that the witness' presence was necessary to facilitate the trial.[3] Hence, Miller's conclusion that error

---

3. This is Miller's interpretation of *Shaw*'s import. We note that *Shaw* reversed for a new trial because of the erroneous admission of certain testimony and then proceeded to discuss "other issues." *Shaw*, 539 P.2d at 252. Regarding "the propriety of having the complaining witness, Mrs. Shaw, seated at the counsel table with the prosecuting attorney during these proceedings," the court declared,

> Ordinarily witnesses (other than a defendant) should not be seated at counsel table unless a showing is made to the trial judge of the necessity of having the witness present with counsel to facilitate trial of the case. Whether a wit-

occurred when the State failed to make a showing of necessity to the trial court.

■ Miller cites us to no Indiana authority requiring such a showing. Further, our supreme court has described the "primary reason for a separation of witnesses order" as being "to prevent witnesses from gaining knowledge of questions actually posed to, and answers actually given, by prior witnesses, and adjusting their own testimony as a result thereof." *Clark v. State* (1985), Ind., 480 N.E.2d 555, 558. Because Chapman had already testified when Miller made the motion for separation of witnesses, any adjustment in his testimony would be heard by the jury when he was later called by the defense and could be emphasized to their advantage. Thus, under Indiana law, the primary reason for a separation of witnesses order would not have been addressed by excluding Chapman.

Finally, our standard for appellate review of an order for separation of witnesses requires *"manifest* abuse of discretion before the judge's ruling will be disturbed." *Johnson v. State* (1972), 258 Ind. 648, 283 N.E.2d 532, 535–36 (emphasis in original). As in *Johnson*, Miller has "failed completely to show in what way" the trial court's ruling "was prejudicial to him." *Id.*, 283 N.E.2d at 536. Miller simply states that the ruling was "prejudicial because the Defense called Chapman as a witness in its case-in-chief, after Chapman had heard every other witness testify." Miller's Brief at 12. However, "[m]ore than a bare contention is necessary." *Johnson*, 283 N.E.2d at 536.

The trial court's order ruling which allowed Chapman to remain in the courtroom was not erroneous and is affirmed.

### 2. *Restitution Hearing*

Miller next claims the trial court erred in failing to "inquire into the defendant's ability to pay restitution" as required by *Miller v. State* (1986), Ind., 502 N.E.2d 92, and *Smith v. State* (1984), Ind.App., 471 N.E.2d 1245. The State responds that the court ordered Miller to pay restitution pursuant to Ind. Code 35–50–5–3, R. at 148, which requires no inquiry into ability to pay.

In *Miller*, the order that the defendant make restitution to the defendant was "a part of a condition of probation." *Miller*, 502 N.E.2d at 94. *Miller* specifically refers to the trial court's authority to order such restitution pursuant to Ind.Code 35–38–2–2(a)(5),[4] and the requirement of the statute that the trial court "determine the defendant's ability to pay the amount of restitution ordered." *Id.*, 502 N.E.2d at 96. Similarly, *Smith, supra*, held that because there was no "arguable distinction between suspended sentences and probation," the situation where the sentence was suspended was governed by the same statutory provision for permissible conditions of probation.[5]

However, as the State notes, Miller was ordered "to make restitution to the victim of his crime" as part of his sentence by the authority of I.C. 35–50–5–3(a).[6] Because both *Miller* and *Smith, supra*, are authority when a defendant is placed on probation or his sentence suspended, their requirement of an inquiry into ability to pay derives from

---

ness should be allowed to remain at counsel table is addressed to the discretion of the trial court.
*Id.*, 539 P.2d at 253.

**4.** I.C. 35–38–2–2 was repealed in 1991 and replaced with I.C. 35–38–2–2.3. I.C. 35–38–2–2(a)(5) authorized the court to impose as a condition of probation that one
Make restitution or reparation to the victim of his crime for the damage or injury that was sustained. When restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance.

**5.** *Smith* refers to I.C. 35–7–2–1, repealed in 1983 and replaced by I.C. 35–38–2–2. As noted above,

this was in turn replaced in 1991 by the legislature with I.C. 35–38–2–2.3.

**6.** I.C. 35–50–5–3(a) provides that

In addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime. The court shall base its restitution order upon a consideration of:
(1) Property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate); . . . .

I.C. 35–38–2–2.3(a)(5), the State argues, and they are inapplicable to restitution ordered under I.C. 35–50–5–3(a).

■ We confronted these positions in *Bitner v. State* (1989), Ind.App., 546 N.E.2d 117. We found "[t]here is no provision as to a defendant's ability to pay" in I.C. 35–50–5–3. *Id.* at 120. We referred to *Smith, supra,* and its acknowledgment of *Sales v. State* (1984), Ind.App., 464 N.E.2d 1336, holding "equal protection concerns require an inquiry into the defendant's ability to pay before restitution could be imposed to prevent indigent defendants from being imprisoned because of their inability to pay." *Bitner* at 120. We noted the State's argument in *Smith* that restitution was imposed pursuant to the sentencing statute and not the probation provision but our conclusion "that the same equal protection concerns present for restitution ordered pursuant to" a probation order "would be present for restitution ordered, along with a suspended sentence, pursuant to" the sentencing statute. *Id.* at 120–21. In our final analysis, however, because Bitner's sentence was executed and he did "not face longer imprisonment because of his failure to pay restitution, the equal protection concerns present in *Smith* and *Sales*" were held to be "not present." *Id.* at 121. Thus, "[r]estitution imposed upon a defendant with an executed sentence does not require an inquiry into the defendant's ability to pay by the trial court." *Id.*

The court did not err in ordering Miller to pay restitution.

SHARPNACK, C.J., and CHEZEM, J., concur.