PEOPLE *v.* SCHNEIDER.

1. MUNICIPAL CORPORATIONS—ORDINANCES—REGULATION OF AUTO-
MOBILES.

The city of Detroit has power under its charter (1904, § 170),
to provide by ordinance for the registration and numbering
of automobiles and other motor vehicles.

2. SAME—LICENSE—REVENUE.

An ordinance regulating automobiles and requiring registra-
tion and numbering thereof at a cost to the owner of $1 to
cover the value of figures furnished by the city to form the
number, is not objectionable as a license, it being at most a
mere means of regulation, and not a license for revenue.

3. SAME—CONSTITUTIONALITY.

An ordinance requiring one operating an automobile on the
street to display thereon a number furnished by the city, is
not in conflict with the Constitution in that it is an unreason-
able search, or compels the operator to furnish evidence
against himself, or deprives him of rights without due pro-
cess of law; but such an ordinance is a justifiable exercise of
the police power, in the interest of the safety of the traveling
public.

Certiorari to recorder's court of Detroit; Phelan, J.
Submitted February 16, 1905. (Docket No. 268.) De-
cided April 21, 1905.

John P. Schneider was convicted of a violation of an or-
dinance regulating the use and speed of automobiles and
other motor vehicles. Affirmed.

*Henry F. Chipman* and *Henry Look*, for appellant.

*Timothy E. Tarsney* and *J. Walter Dohany*, for the
people.

CARPENTER, J. Certiorari to the recorder's court of
the city of Detroit. Respondent was convicted in the
lower court, and fined $25, for operating an automobile in

the streets of the city of Detroit without having first registered said automobile, and without placing thereon a number, as required by an ordinance of said city. We are asked to set aside said conviction upon the ground that said ordinance is invalid.

The provisions of said ordinance material to this decision are as follows:

"SECTION 1. No person or persons shall drive or propel any automobile or other motor vehicle within what is known as three-quarter mile circle at a rate of speed to exceed eight (8) miles per hour; nor shall any person or persons drive or propel any automobile or other motor vehicle outside of said three-quarter mile circle within the city limits at a rate of speed to exceed twelve (12) miles per hour; and at no time shall any person or persons drive or propel any automobile on any street, highway, or public place in a careless, reckless, or negligent manner. * * *

"SEC. 2. The owner or driver of any automobile or other motor vehicle shall, before operating the same, register with the license collector his name and residence, together with a description of the vehicle so owned or operated, and the license collector shall enter such name and residence and description in a record kept for that purpose and shall furnish the person so registered with one or more aluminum figures sufficient to compose a number corresponding with the number appearing upon the record so made. The figures shall be four (4) inches high, and three (3) inches in width, for which the person to whom delivered shall pay to said license collector the sum of one dollar ($1). The owner of such vehicle shall place, or cause to be placed, such figures on the rear of his vehicle in the center of the bed thereof, arranging the same in a horizontal line with the space of one and one-half (1½) inches, between the nearest adjacent points thereof, and on a dark background; but said figures may be rigidly attached to the axle or hung under the body of the vehicle; said figures shall at no time be concealed or covered, but shall be kept in plain sight. * * *

"SEC. 5. No person shall operate or cause to be operated an automobile or other motor vehicle upon any of the streets, alleys, boulevards, park driveways, or public grounds of the city of Detroit without complying with the provisions hereof.

"*Provided*, That the provisions of the ordinance relating to the registration and numbering of such vehicles and notification as to transfers thereof shall not apply to automobiles or other motor vehicles owned by nonresident visitors when said vehicle is kept in the city for not more than two (2) days.

"SEC. 6. Any person violating any of the provisions of this ordinance shall be punished by a fine not exceeding one hundred dollars ($100) for each offense; and, in the imposition of such fine, the court may make a further sentence that, in default of the payment of such fine, the offender may be imprisoned in the Detroit house of correction for such offense for any period of time not exceeding three (3) months."

Respondent concedes that part of the ordinance regulating the speed of automobiles is valid. He contends, however, that the provisions respecting registration and numbering are invalid. His objections to the validity of those provisions may be classified thus: (1) The legislature has never granted to the common council of Detroit authority to enact them. (2) They interfere with respondent's constitutional rights. We will consider each of these objections separately.

1. Has the legislature authorized the common council to enact the provision in question? This depends upon the proper construction of section 170 of the city charter (1904), which gives the common council authority "to control, prescribe, and regulate the manner in which the highways, streets, avenues, lanes, alleys, and public grounds and spaces within said city shall be used and enjoyed." It is scarcely necessary to say that this gives the common council ample authority to enact ordinances which will tend to make streets safe for the traveling public. We may take judicial notice that many of these automobiles may be driven at a speed of at least 40 miles an hour. Driven by indifferent, careless, or incompetent operators, these vehicles may be a menace to the safety of the traveling public. Under its authority to regulate the use of the streets, the city may enact ordinances which will diminish this danger. It is clear, and it is conceded, that it may

regulate the speed of automobiles and repress their careless management, but it is contended that it has no power to provide for their registration and numbering. It is not difficult to see that the registration and numbering of automobiles is intimately connected with their safe operation in the streets. In a city like Detroit many automobiles are precisely alike in external appearance. They are sometimes operated by persons whose faces are partially concealed and whose identity is uncertain. Those operators who are most reckless and indifferent—and those are the ones who endanger the safety of others—may violate this ordinance with impunity unless some method is adopted by which they or their automobiles may be identified. The provision in the ordinance for registration and numbering is such a method. It is reasonable to believe that, when he knows that the number displayed at the rear identifies his automobile, fear of discovery and punishment will lead the automobile's driver to observe the requirements of the ordinance. Indeed, we cannot say that the common council did not decide—and did not justly decide—that the provision for identification by registering and numbering was necessary to prevent injury to pedestrians and other travelers from the careless management of automobiles.

If authority be needed for the proposition that the city may enact this provision for the purpose of identifying automobiles which endanger the safety of travelers, *Frankford, etc., R. Co.* v. *City of Philadelphia*, 58 Pa. St. 119, is such an authority. The ordinance there in question provided "that each car run shall be numbered and have its number painted in a conspicuous place." The court sustained this ordinance, saying:

"It is obvious that its effect is that of police regulation. It clearly furnishes a means of identifying every car which may be run in violation of those rights and public interests which the city is authorized by its charter to maintain and secure."

See, also, *Laundry License Case*, 22 Fed. 703.

But it is said that the provision for registration and numbering is a license, and that the grant of authority to regulate gave the city no power to license.    If the provision for registration and numbering—which involved no discrimination, and requires the payment of nothing more than is necessary to pay for the number which the municipality furnishes—can be regarded as a license (for conflicting definitions of "license," see 2 Cooley on Taxation [3d Ed.], p. 1137; *Adler* v. *Whitbeck*, 44 Ohio St. 539), it is not a license for the purpose of raising revenue.    If it were, it might well be contended that it did not pass as an incident to the power to regulate.    See 2 Cooley on Taxation (3d Ed.), p. 1141; *Laundry License Case*, 22 Fed. 703.    It is a license (if a license at all) as a mere means of regulation; indeed, we might say, as already shown, as a necessary means of regulation.    This proposition is self-evident, viz., that the grant of authority to accomplish a certain purpose carries with it authority to use any proper and lawful means without which that purpose cannot be accomplished.    If, therefore, the speed of automobiles cannot be effectually regulated without licensing them, the grant of the power to regulate confers upon the city power to license, unless some other provision of law forbids the exercise of that power.    I think this conclusion is supported by the following authorities:    *Town of Russellville* v. *White*, 41 Ark. 485; *Fort Smith* v. *Ayers*, 43 Ark. 82; *Village of St. Johnsbury* v. *Thompson*, 59 Vt. 300; *Laundry License Case*, supra.

In the *Laundry License Case*, which involved the licensing of laundries in the city of Portland, Or., it was said:

"The words 'to control' and 'to regulate,' ex vi termini, imply to restrain, to check, to rule and direct.    And, in my judgment, the power to do either of these implies the right to license, as a convenient and proper means to that end.    *   *   *   By this means the persons or occupations to be regulated are located and identified and brought within the observation of the municipal author-

ities, so that whatever regulations are made concerning them may be the more easily and certainly enforced."

There are cases holding that the grant of power to regulate does not confer upon the city power to license. See *City of Burlington* v. *Bumgardner*, 42 Iowa, 673. In that case (that was a grant of authority to regulate taverns and houses for public entertainment) it might be said that the power of regulation might be effectually exercised without licensing. That is by no means an authority for the proposition that, when regulation cannot otherwise be effectual, the grant of power to regulate does not carry with it power to license. We do not think that any of the cases cited by respondent are opposed to this conclusion. The cases most nearly in point are *City of Chicago* v. *Collins*, 175 Ill. 445 (49 L. R. A. 408), and *City of Chicago* v. *Banker*, 112 Ill. App. 94.

In *City of Chicago* v. *Collins*, the supreme court of Illinois held invalid an ordinance of Chicago which imposed a license fee on each vehicle using the streets of the city. The grounds of that decision were these: (*a*) The city had no authority to prohibit, and therefore no authority to license, " an ordinary method of locomotion, or even an extraordinary method, if it is not of itself calculated to prevent a reasonably safe use of the street by others." (*b*) The city had no authority to raise a revenue by taxing the use of vehicles which were already subject to taxation under the general laws of the State. That decision has no application to the case at bar. It does not hold nor indicate that municipal authorities may not (if in their judgment such a requirement is essential to safe travel) exclude from their streets automobiles not registered and numbered.

*City of Chicago* v. *Banker*, supra, is more nearly in point. In that case it was decided that an ordinance of the city of Chicago compelling one " who uses his automobile for his pleasure and business only to submit to an examination and to take out a license ( if the examining board see fit to grant it )   *   *   *   is beyond the power

of the city council, and is therefore void." Without approving that decision, it is sufficient to point out that the ordinance in question in that case goes further than the ordinance in the case at bar.

We conclude, therefore, that the common council of the city of Detroit had authority to provide for the registration and numbering of automobiles under the grant of power to regulate the use of the streets, unless the exercise of that power is forbidden on some constitutional ground.

2. Is the ordinance constitutional? Respondent contends that the ordinance violates section 26, art. 6, of our Constitution, which forbids "unreasonable searches," and section 32 of article 6, which reads:

"No person shall be compelled, in any criminal case, to be a witness against himself, nor be deprived of life, liberty, or property without due process of law."

We deem it sufficient to say that the provision requiring one operating an automobile on the street to display thereon a number furnished by the municipality is not an unreasonable search. The statement in the opinion of this court in *Robison* v. *Haug*, 71 Mich. 38, relied upon by respondent, which denies the right of the public to look into one's private place of business or residence, manifestly has no application. We think it equally clear that the ordinance does not compel an automobile owner or operator to testify against himself, or deprive him of any property rights. It is merely a justifiable exercise of the police power in the interest of the safety of the traveling public. We think it unnecessary to discuss any other objection.

The conviction is affirmed.

MCALVAY, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.