CITY OF DETROIT v. C. H. LITTLE CO.

MUNICIPAL CORPORATIONS — LICENSES — USE OF STREETS — ORDINANCE—DETROIT CHARTER.
    An ordinance of the city of Detroit, forbidding any person from engaging in the business of using vehicles to draw earth and other materials (chapter 54, Compiled Ordinances of Detroit, § 2), without first procuring a license, is authorized by paragraph 186 of the charter of the city of Detroit, regulating the use of vehicles for hire, and does not prohibit a firm, engaged in the business of furnishing building and paving supplies, from delivering its commodities, by its private wagons, without a license; since the ordinance effects a regulation of a business, rather than of the use of streets under the power conferred by paragraph 170 of the charter.

Certiorari to the recorder's court of the city of Detroit;

Connolly, J.   Submitted October 10, 1910.   (Docket No. 28.)   Decided December 7, 1910.

The C. H. Little Company and Joseph Conant were convicted of violating a municipal ordinance. The said company brings certiorari. Reversed and no new trial ordered.

*P. J. M. Hally* and *Thomas Penniman*, for the people.

*Willard E. Warner*, for defendant.

Ostrander, J.   Section 2 of chapter 54 of the Compiled Ordinances of the city of Detroit for the year 1904, as amended and approved January 2, 1907, is as follows:

"The mayor is hereby authorized to grant a license good for one year, or until the second Tuesday in March then next ensuing, to any person of good character, to drive, use, or cause to be driven or used, any vehicle for carting or hauling earth, chips, stone, bricks, ice, mortar, dirt, ashes, shavings, hay, straw, manure, filth, or rubbish of any description on his paying into the city treasury the sum of fifty cents, and executing a bond to the city of Detroit in the penal sum of one hundred dollars, with one or more sufficient sureties, conditioned that the licensee will faithfully observe the charter and ordinance of the city of Detroit, and indemnify said city against any loss or damage which it may sustain, or expense to which it may be put, by the unlawful dumping of contents of said licensee's vehicle upon any public street, alley, park or place within said city.

"No person shall engage in said business without a license from the mayor as herein provided."

The cause was submitted in the recorder's court upon the following stipulated facts:

"The C. H. Little Company is a body corporate organized and existing under the laws of the State of Michigan, and transacts business in and about the city of Detroit and elsewhere. It has seven yards in and about the said city at which it receives cement, sand, wall plaster, crushed stone, lime, sewer pipe, firebrick, metal lath, wall

ties, wall plugs, stanchions, paints, stains, furnishings and other building and paving supplies, in boat load, car load and train load lots and quantities for storage, and from which said yards it delivers the same in the usual and ordinary course of business to its patrons, either by teams, wagons and vehicles of its own, or to its patrons' teams, wagons and vehicles, at such yards. Said yards are located as follows: One at 340 Atwater St. east; one at John R. St. and Lake Shore Ry.; one at Michigan and Hubbard Aves.; one at Woodward Ave. and Terminal Belt Line Ry.; one at Jefferson Ave. and Terminal Belt Line Ry.; one at foot of West End Ave., Delray; one at Bellevue and Berlin Aves. And its main office is at Nos. 34–40 Peninsular Savings Bank Bldg. in said city. During the ordinary season in which such materials are sold and delivered, it employs upon an average of 237 men, by the month, and others from time to time as its necessities require. It manufactures some of its commodities and buys others in car load, train load and boat load quantities, distributing the same to its several yards by railway cars, as required at such yards. It pays its annual city and State and county taxes upon its stock of commodities upon hand and upon its teams, wagons, harnesses, vehicles and all other utilities used in the conduct of its business, and such special assessments, if any, as may be assessed against it, a large part of which city taxes are used by said city in the construction and maintenance of its highways, over which the respondent and its patrons haul such portions as are delivered by wagon loads.

"For the deliveries of such materials to its patrons, it owns, keeps and maintains 147 horses, 69 double wagons and 9 single wagons, upon each side of which double and single wagons it attaches a board about six inches wide by four feet long upon which is painted, upon a yellow background in letters of black and five inches high, its name, 'The C. H. Little Co.,' following which in equally large characters is a 'No. ———,' specifying its own number of such wagon, which letters, words and figures may be read for a distance of several hundred feet by any casual observer, and by which the identity and ownership of such teams and wagons may, at all times, be known. Its teams and wagons are used only for the deliveries of its own materials and commodities, and they are never rented out, for hire, to other parties as a drayman, carman,

truckman, porter, runner, driver of coupés, hackney coaches, omnibuses, carriages, sleighs, express vehicles or vehicles of any description used and employed for hire, but are owned and maintained only as a necessary adjunct to the conduct of its own business and for making deliveries to its own patrons of its commodities kept by it for sale and delivery.   On or about April 28, 1909, and prior thereto, it had in its employ one Joseph Conant, to whom it paid regular weekly wages, and as its teamster in driving one of its teams and wagons loaded with a quantity of its product through the streets of Detroit, and upon each side of which said wagon was a board with its name and number as aforesaid, in plain sight and readily discernible as above stated.   That at the time complained of the said wagon, team and driver were engaged in delivering its own material and product to one of its customers in said city in accordance with an order therefor.   That at said time this respondent had not secured from the mayor of said city, nor any other representative thereof, any license nor number for such wagon, nor had it filed with said city a bond in the sum of $100 or any other amount as claimed to be required by an ordinance of said city, upon which the complaint herein is based.   At the time aforesaid, the said Joseph Conant had no interest nor title whatever in and to said team and wagon, nor the contents thereof, but the same belonged solely to this respondent, who employed said Conant to drive the same.   That, at the time complained of herein, the said team, wagon and driver were upon one of the public streets or highways within the limits of said city, and were stopped by a member of the police force of said city, who took the said driver's name, respondent's name and made the complaint herein on said April 28, 1909."

The C. H. Little Company was convicted of a violation of the ordinance and a fine of $25 was imposed.   It sued out a writ of certiorari to review the judgment.   The errors specified are based upon exceptions to the written findings and the conclusion of the recorder, and the point presented for decision is whether the ordinance has any application to the vehicles employed by the C. H. Little Company in carrying on its business.   It is the contention on the part of the city, which contention the recorder sustained, that the ordinance was made in the exercise of

power conferred by paragraph 170 of the charter, "to control, prescribe, and regulate the manner in which the highways, streets, avenues, lanes, alleys, and public grounds and spaces within said city shall be used and enjoyed," and that the case is ruled in principle by *People* v. *Schneider*, 139 Mich. 673 (103 N. W. 172, 69 L. R. A. 345). It is said in the brief for the city:

"We take the position that the power to pass and enforce section 2 of chapter 54 of the Compiled Ordinances of 1904, is derived solely and alone from said section 170, and in no wise do we claim that the common council was authorized to license vehicles which come within the description therein, under section 186, which gives the common council power to regulate and license vehicles of every description used and employed for hire and to fix and regulate the amounts and rates of compensation."

On the other hand, the contention of plaintiff in certiorari is that the ordinance is clearly the exercise of power granted by paragraph 186 of the charter:

"To license and regulate the keepers of hotels, * * * also solicitors of passengers, * * * also draymen, carmen, truckmen, porters, runners, drivers of coupés, hackney coaches, omnibuses, carriages, sleighs, express vehicles, and vehicles of every description used and employed for hire, and to fix and regulate the amounts and rates of compensation."

The ordinance, the provisions and validity of which were considered in *People* v. *Schneider*, was one limiting the speed of automobiles and other motor vehicles, and it required each owner of such a vehicle to register his name and residence and a description of his vehicle and to procure and display on the vehicle a number, to be purchased for a fixed sum from the city, before operating the vehicle in the streets of the city. The question involved was whether the common council had power to pass the ordinance. The power was found in paragraph 170 of the charter.

There is no question here of the power of the council to pass the ordinance which is sought to be enforced. It

seems to be supposed by the city attorney that its construction and application may be broadened or narrowed, as power to pass it is referred to paragraph 170 or to paragraph 186, of the charter. The power conferred in paragraph 170 of the charter is, in a sense, more general—less restricted—than that conferred in paragraph 186. The particular ordinance is clearly intended, not as a regulation of the use of the highways of the city, but as a regulation of business. It agrees, in its terms, with the power delegated to the city in paragraph 186 of the charter, for which reason, if for no other, we regard the ordinance as passed in the exercise of the power thus conferred. The use of the streets by plaintiff in certiorari is not different in kind from the use made of them by any merchant who delivers goods to customers. The stipulated facts show that its business is not one which the ordinance was designed to regulate.

The judgment of the recorder's court is reversed, the conviction set aside, and no new trial granted.

BIRD, C. J., and BROOKE, BLAIR, and STONE JJ., concurred.