PEOPLE *v.* CRAMER.

1. HEALTH—STATUTE REQUIRING PHYSICIANS TO REPORT BIRTHS NOT UNDULY HARD OR BURDENSOME.

Act No. 343, Pub. Acts 1925, requiring attending physician to file certificate of birth with the registrar of the district, does not impose an undue hardship or burden, nor is the requirement that it be filed within five days after the birth of the child unreasonable, in view of the provision for filing an incomplete report in case all the information required is unobtainable.

2. CONSTITUTIONAL LAW—STATUTES—DUE PROCESS—EQUAL PROTECTION OF LAW—PHYSICIANS AND SURGEONS.

Act No. 343, Pub. Acts 1925, requiring attending physician to file certificate of birth does not deprive the physician of property without due process of law because no compensation is provided therefor, nor are physicians as a class thereby deprived of equal protection of the law, in violation of the Federal and State Constitutions.

3. PHYSICIANS AND SURGEONS—PRACTICE OF MEDICINE SUBJECT TO REGULATION UNDER POLICE POWER.

The practice of medicine is subject to regulation under the police power of the State, and any reasonable condition or requirement may be imposed by the State upon those engaged in that profession.

4. CRIMINAL LAW—POLICE POWER—INTENT NOT NECESSARY ELEMENT.

An enactment which is in the exercise of the police power of the State does not need to embody the element of intent in creating an offense incident to its violation.

5. SAME—CONSTITUTIONAL LAW—CRUEL AND UNUSUAL PUNISHMENT.

The punishment provided by Act No. 343, Pub. Acts 1925, requiring attending physician to file certificate of birth, for violation thereof, cannot be said to be "cruel and unusual," within the meaning of the Constitution, where the statute fixes

a minimum fine of $5 for the first offense, and a fine of not less than $25 nor more than $100 or imprisonment in the county jail not to exceed 60 days, or both, for each subsequent offense.

6. Constitutional Law — Delegation of Legislative Power — Health.

   Act No. 343, Pub. Acts 1925, requiring physician to file certificate of birth, is not an unwarranted attempt to delegate to the State board of health legislative power in violation of article 5 of the State Constitution.

Error to Shiawassee; Collins (Joseph H.), J. Submitted April 11, 1929. (Docket No. 115, Calendar No. 34,082.) Decided June 3, 1929.

George L. G. Cramer was convicted of violating Act No. 343, Pub. Acts 1925, for failure to report a birth. Affirmed.

*George E. Pardee* and *Roy D. Matthews,* for appellant.

*Wilber M. Brucker,* Attorney General, *Henry J. Horrigan,* Assistant Attorney General, and *G. F. Friegel,* Prosecuting Attorney, for the people.

North, C. J. The defendant in this case is a physician who has been engaged in the practice of medicine in the State nearly 40 years. In June, 1927, he was convicted of violating Act No. 343, Pub. Acts 1925, which provides for the registration of births. In November, 1928, he was charged with committing a second offense in violation of the same statute. Conviction and sentence followed. The defendant reviews by writ of error. The statute in part is as follows:

"Section 1. The State department of health shall have supervision of the registration of births and

deaths in this State. It shall require the registration of all births and deaths in each primary registration district, as constituted by this act. The State commissioner of health with the advice and consent of the public health council may formulate such rules and regulations supplementary to the provisions of this act and not inconsistent therewith, as may be necessary to carry out the provisions hereof.  * * *

"Sec. 7. The State commissioner of health shall prepare and furnish to the registrars all forms and blanks required by this act  * * *. The form of such certificates and blanks and the information to be furnished thereon shall be determined by him but shall conform to the standardized form as nearly as possible.  * * *

"Sec. 12. The birth of each child born in this State shall be registered within five days after the date thereof. A certificate of such birth shall be filed with the registrar of the district in which it occurred. It is hereby made the duty of the physician, midwife, or person acting as midwife in attendance at such birth, to file the certificate. If no physician, midwife, or person acting as midwife was in attendance, it shall be the duty of the father or mother of the child, the householder or owner of the premises or the manager or superintendent of the public or private institution where the birth occurred, in the order named, to report such birth to the local registrar within five days thereafter. If the person required to file such certificate is unable to obtain any item of information required to be furnished, the registrar shall secure the same if possible from any person having such knowledge and complete the certificate of birth."

The only question involved in this case is the constitutionality of the act under which the prosecution was brought. The defendant's contention is stated in his brief as follows:

"Respondent's defense is that the act in question is unconstitutional in that the statutory period of five days in which the physician is to file the certificate of birth and other provisions in the act are so unreasonable, harsh, and oppressive as to bring it within the prohibitive provisions of the Federal and State Constitutions; also, that the act arbitrarily and unlawfully discriminates against the physicians as a class; that it is a taking of private property without due process of law; that the act is unconstitutional in that it violates the constitutional provisions prohibiting cruel and unusual punishment, being the claim that to arbitrarily punish a physician as provided in the statute where there is no wilfulness or wrongful intent is arbitrary, oppressive, and high-handed legislation, also, that the legislature has delegated legislative power to the department of health."

The specific constitutional provisions which defendant claims this act offends against are the 5th, 8th, and 14th amendments to the Federal Constitution, and sections 15 and 16 of article 2 of the State Constitution, whereby every citizen is guaranteed (1) equal protection of the laws; (2) that no State shall make or enforce any laws which shall abridge the privileges or immunities of a citizen of the United States; (3) that he shall not be deprived of life, liberty, or property without due process of law; (4) that excessive fines will not be imposed, nor (5) shall cruel and inhuman punishments be inflicted. It is also claimed by the defendant that this act is invalid because it seeks to delegate to the health department powers vested in the legislature, in violation of article 5 of the State Constitution. The statute must stand or fall as an exercise of the police power of the State. The pertinent inquiry is whether the act is a valid exercise of that power.

By it certain matters which have to do with public health, welfare, and safety are regulated. In *Dobbins* v. *Los Angeles,* 195 U. S. 223 (25 Sup. Ct. 18, 49 L. Ed. 169), it is said:

"Every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and that it is not the province of courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community. But notwithstanding this general rule of the law, it is now thoroughly well settled by decisions of this court that municipal by-laws and ordinances, and even legislative enactments undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the constitutional rights to carry on a lawful business, to make contracts, or to use and enjoy property."

Both in his brief and in the oral argument the contentions most stressed by the defendant are (1) that the time limit of five days within which the physician is required to file the report is so short that it is unreasonable, and inasmuch as unintentional violations thereof subject the offender to a penalty it results in cruel and unusual punishment; and (2) also that, since no fee is provided in the act for making the report, it is an attempt to compel service to the State without compensation, thereby depriving the party rendering such service of property without due process of law.

At the trial the defendant offered testimony of numerous other physicians to the effect that an unreasonable hardship is imposed upon them by this enactment, and that in many instances it is impossible to obtain and report all the information sought by the department of health within the time limit of five days. A reading of section 12 of the act itself discloses that provision is made for exactly such contingencies. Obviously, any attending physician becomes possessed of certain information required by the blank form upon which the report is made to the department of health under this statute. For example, he certainly would have information concerning the following: Whether the child was born dead or alive, the surname, the birthplace, the sex, whether the birth was of a single child, twins, or triplets, date of the birth, whether the child's eyes had been treated at birth as required by law, and whether there was any apparent serious malformation or defect. In nearly every case the following required information could also be obtained without serious trouble or inconvenience, to-wit: The given name of the child, the number in order of birth in the family, legitimacy; and as to each parent the name, residence, color, or race, age, birthplace, and occupation. Also the number of children born of the mother and the number living at the time. The foregoing is the extent of the information required by the State health department under this statute. While it is obvious that in certain cases compliance with this law might result in some inconvenience to the attending physician, it cannot be said that it imposes an undue hardship or burden, especially in view of the importance of perpetuating in the form of a permanent record the information thus obtained by the State. Nor can it be said that the requirement of the statute that this information shall be

filed within five days after the birth of the child is unreasonable, especially in view of the provision in section 12 that .in case a physician "is unable to obtain any item of information required to be furnished, the registrar (with whom the same is filed by the physician) shall secure the same if possible from any person having such knowledge and complete the certificate of birth." The statute thus contemplates and provides for filing an incomplete report in those cases wherein the physician is unable to obtain all of the desired information.

The contention made by the defendant that, because no compensation is provided in the statute for making and filing the report, he is thereby deprived of property without due process of law, and further, that physicians as a class are thereby deprived of equal protection of the laws, is not tenable. The mere circumstance that there are clerks and other employees in the health department who may render some service in classifying and compiling these statistical facts, and that they are paid for such services, does not render this statute unconstitutional on the ground that in so far as the matter of compensation is concerned, it does not apply alike to all persons within the class affected by .it. By its terms the statute is made applicable to certain persons in attendance at the birth of a child: physicians, midwives, etc. This is a complete and logical classification for the purpose of this legislation.

Much reliance is placed by the defendant on *State* v. *Boone,* 84 Ohio St. 346 (95 N. E. 924, 39 L. R. A. [N. S.] 1015, Ann. Cas. 1912C, 683), and again reported in 85 Ohio St. 313 (97 N. E. 975, 39 L. R. A. [N. S.] 1019); but the act there held to be invalid differed from the Michigan act, in that it provided:

"No certificate shall be held to be complete and correct which does not supply *all* of the items of

information, * * * or *satisfactorily* account for their omission. And any physician or midwife * * * who shall neglect or refuse to file a proper certificate of birth with the local registrar, within the time required by this act, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined," etc. 99 Ohio Laws (1908), p. 296.

In the prevailing opinion in the *Boone Case* it is conceded that the State may require a physician to report births professionally attended by him; and it is interesting to note that such a law without a provision for compensation was enacted in Ohio following the decision in that case and has since remained a part of the Ohio statutory law. Ohio Gen. Code, § 218 (1921). In the note appended to the report of the *Boone Case* in 39 L. R. A. (N. S.) 1015, it is stated: "No case has been found which sustains the position taken in *State* v. *Boone*." We think the law was properly indicated in that case in the following statement from the dissenting opinion of Spear, J.:

"The general assembly has power to require physicians to certify to the proper board such information respecting births and deaths as, speaking in general terms, will naturally come within the knowledge or observation of an attending physician. This upon the ground that the physician is licensed by the State. * * * This requirement is, therefore, not unreasonable, and it is hornbook knowledge that where special privileges are accorded by the State special duties in connection therewith may be exacted without awarding money compensation therefor."

The practice of medicine is subject to regulation under the police power of the State, *Locke* v. *Ionia Circuit Judge,* 184 Mich. 535; *People* v. *Blair,* 192

Mich. 183, and any reasonable condition or requirement may be imposed by the State upon those engaged in that profession. The validity of legislation of this type is supported, not only by a recent decision of this court, but by an abundance of authority from other jurisdictions. *People* v. *Wohlford,* 226 Mich. 166; *Commonwealth* v. *McConnell,* 116 Ky. 358 (76 S. W. 41, 25 Ky. L. Rep. 552); *State* v. *Wordin,* 56 Conn. 216 (14 Atl. 801); *Robinson* v. *Hamilton,* 60 Iowa, 134 (14 N. W. 202, 46 Am. Rep. 63); *Smythe* v. *State,* 124 Miss. 454 (86 South. 870); *Bozicevich* v. *Kenilworth Merc. Co.,* 58 Utah, 458 (199 Pac. 406, 17 A. L. R. 346); *Brown* v. *State,* 137 Wis. 543 (119 N. W. 338); *State* v. *Madden,* 81 Mo. 421; *Presby* v. *Klickitat County,* 5 Wash. 329 (31 Pac. 876).

In *Brown* v. *State, supra,* the court did not pass upon the constitutionality of the act; but a similar statute is still in force in that State (Wis. Stat. 1927, § 69.26), and it requires the filing of the report within five days after the birth.

The record in *People* v. *Wohlford, supra,* presents the same contention as is here urged, that, by the terms of the statute, the element of intent is not essential to constitute a violation thereof, thus making it possible to inadvertently commit the offense; and also that the penalty, under the circumstances, is cruel and unusual. Neither of these phases of the *Wohlford Case* were discussed at length in the opinion, but Justice Sharpe, writing for the court, said:

"This disposes of the question discussed by counsel in their briefs. We have, however, considered the *other reasons assigned for arresting judgment* and find them to be without merit."

With equal propriety it might be said of these questions in the instant case that they are "without

merit." That an enactment which is in the exercise of the police power of the State does not need to embody the element of intent in creating an offense incident to its violation is well settled. *People* v. *Roby,* 52 Mich. 577 (50 Am. Rep. 270); *People* v. *Sybisloo,* 216 Mich. 1 (19 A. L. R. 133). And the argument that the punishment provided is "cruel and unusual" can hardly be reconciled with the statute which fixes a minimum fine of $5 for the first offense and a fine of not less than $25 nor more than $100 or imprisonment in the county jail not to exceed 60 days, or both, for each subsequent offense.

Defendant's contention that the act embodies an unwarranted delegation of legislative power to the department of health is based upon the assumption that the commissioner of health is vested with unlimited powers in determining what information may be required to be included in the reports. This clearly is not a correct construction of the act, which provides that the rules and regulations of the department cannot be inconsistent with the provisions of the act itself, and that the department's blanks on which the information is furnished shall conform to the "standardized form as nearly as possible."

Further, by the terms of the act, its penal clause is made applicable only to those who violate its express provisions "or any rule or regulation *lawfully* established by the State commissioner of health," etc. The lawfulness and reasonableness of the rules and regulations of the department of health are subject to review by the courts. *Rock* v. *Carney,* 216 Mich. 280 (22 A. L. R. 1178). No claim is made that the information which defendant was required to furnish in the instant case was not germane to the purposes of the statute. Should the department

attempt to compel a physician to furnish information which was not contemplated by legislative act it would be powerless to do so; but such an attempt would in no way affect the validity of the statute. The act is not an unwarranted attempt to delegate to the State board of health legislative power in violation of article 5 of Michigan's Constitution. *Hurst* v. *Warner,* 102 Mich. 238 (26 L. R. A. 484; 47 Am. St. Rep. 525).

The judgment of the circuit court is affirmed, with direction to proceed to its enforcement.

FEAD, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred. POTTER, J., did not sit.