PEOPLE v. THOMPSON.

1. MOTOR VEHICLES—STATUTES—CONSTITUTIONAL LAW—TITLE OF ACT.

Uniform motor vehicle act (1 Comp. Laws 1929, §§ 4693–4754) is not unconstitutional as embracing subjects not included in title, such as requiring driver to render assistance in certain cases, in case of accident, and make report thereof (§ 4722, subds. [c] [d]), since they are germane to general purpose of act, which is to regulate operation of vehicles on highways.

As to construction and effect of statute in relation to conduct of driver of automobile after happening of an accident, see annotation in 16 A. L. R. 1425; 66 A. L. R. 1228.

2. SAME—AMBIGUOUS LANGUAGE—DUE PROCESS—CONSTITUTIONAL LAW.

Uniform motor vehicle act (1 Comp. Laws 1929, §§ 4693–4754) is not so vague, indefinite, uncertain, and ambiguous as to result in depriving one of his liberty and property without due process of law (§ 4722).

3. CRIMINAL LAW—PENAL STATUTES—REASONABLE CERTAINTY OF LANGUAGE USED SUFFICIENT.

If language used in statute defining offenses conveys intended meaning with reasonable certainty it is sufficient.

4. SAME—MUST BE CLEAR AND DEFINITE.

Penal statutes must be expressed in clear and definite terms.

5. MOTOR VEHICLES—CRIMINAL LAW—APPLICABLE PENALTY.

If circumstances of particular prosecution under uniform motor vehicle act (1 Comp. Laws 1929, §§ 4693–4754) should develop uncertainty as to which penal clause was applicable, accused would be entitled to have lesser of penalties administered.

6. SAME—INTENT NOT NECESSARY ELEMENT OF OFFENSE—CONSTITUTIONAL LAW.

That uniform motor vehicle act (1 Comp. Laws 1929, §§ 4693–4754) provides punishment for certain specified acts without including element of intent or knowledge does not render act unconstitutional.

7. CONSTITUTIONAL LAW—POLICE POWER—HUMANITARIAN POLICE REGULATION VALID.

Humanitarian police regulation is valid notwithstanding it may require time or property of one who finds himself within provisions of law (1 Comp. Laws 1929, §§ 4693–4754).

8. MOTOR VEHICLES—REGULATION—POLICE POWER.

Use of automobiles on public highways is subject to regulation under police power.

9. HIGHWAYS AND STREETS—CONTROL VESTED IN STATE AND MUNICIPALITIES—CONSTITUTIONAL LAW.

Control of highways is vested in State and its municipal subdivisions (Const. art. 8, §§ 26–28).

10. MOTOR VEHICLES—LICENSES—REASONABLE CONDITIONS MUST BE ACCEPTED WITH LICENSE.

In accepting license from State to drive motor vehicle, one must also accept all reasonable conditions imposed by State in granting license.

11. CONSTITUTIONAL LAW—LICENSES—SPECIAL DUTIES MAY BE EX-
ACTED OF LICENSEE.

> Where special privileges are granted by State, special duties in connection therewith may be exacted without providing compensation therefor.

12. MOTOR VEHICLES—LICENSES—EXACTING SPECIAL DUTIES WITH-
OUT COMPENSATION—CONSTITUTIONAL LAW.

> Provisions of uniform motor vehicle act (1 Comp. Laws 1929, § 4722, subds. [c] [d]) requiring licensed autoist to report accident without compensation and give of his time and make use of his property in rendering apparent necessary assistance may be lawfully imposed as incident to his status as licensee, regardless of whether he is chargeable with responsibility for accident in which he is involved.

13. SAME—CRIMINAL LAW—CONSTITUTIONAL LAW—DELEGATING LEG-
ISLATIVE POWER.

> Uniform motor vehicle act (1 Comp. Laws 1929, §§ 4693–4754) is not open to objection that, by uncertainty of its language, it delegates to court and jury legislative power to create or define offense charged, contrary to Constitution (article 5, § 1).

14. SAME—COMPELLING ONE TO BE WITNESS AGAINST HIMSELF.

> Uniform motor vehicle act (1 Comp. Laws 1929, § 4722, subds. [c] [d]) is not open to objection that it compels one to be witness against himself, in violation of Constitution (article 2, § 16).

Appeal from Recorder's Court of Detroit, Traffic and Ordinance Division; Callender (Sherman D.), J. Submitted April 14, 1932. (Docket No. 168, Calendar No. 36,364.) Decided June 6, 1932.

Laurel D. Thompson was charged with failing to stop after a motor vehicle accident. On motion to quash information. Judgment for defendant. The people appeal. Reversed, and trial ordered.

*Paul W. Voorhies,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Eugene Walling* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

*Benjamin D. Burdick,* for defendant.

NORTH, J. Defendant's motion to quash the information filed against him was granted on the ground that the statute (1 Comp. Laws 1929, §§ 4693 to 4754 inclusive) under which defendant was charged is unconstitutional. The people's appeal is from this holding. The pertinent portions of this statute, commonly known as the uniform motor vehicle act, read:

*Title*—"An act to regulate the operation of vehicles on highways; providing for traffic signs and signals; defining the power of local authorities to enact or enforce ordinances, rules or regulations in regard to matters embraced within the provisions of this act; providing for the enforcement of this act and for penalties for violations thereof; to make uniform the law relating to the subject matter of this act and to repeal certain acts and sections of acts.

"SEC. 30. Duty to stop and report in event of accident.

"(a) The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop such vehicle at the scene of such accident and any person violating this provision shall upon conviction be punished as provided in section fifty-six of this act.

"(b) The driver of any vehicle involved in an accident resulting in damage to property shall immediately stop such vehicle at the scene of such accident and any person violating this provision shall upon conviction be punished as provided in section fifty-three-a of this act.

"(c) The driver of any vehicle involved in any accident resulting in injury or death to any person or damage to property shall also give his name, address, and the registration number of his vehicle,

also the name and address of the owner, and exhibit his operator's or chauffeur's license to the person struck or the driver or occupants of any vehicle collided with and shall render to any person injured in such accident reasonable assistance including the carrying of such person to a physician or surgeon for medical or surgical treatment if it is apparent that such treatment is necessary or is requested by the injured person.

"(d) The driver of every motor vehicle involved in an accident resulting in a vehicle or vehicles becoming so disabled as to be incapable of being propelled in the usual manner, or resulting in personal injury or death of any person shall report such accident to the nearest or most convenient police station or police officer within forty-eight hours after such accident. The officer receiving such report shall forthwith forward the same to the commissioner of public safety on forms to be prescribed by him. Such report shall not be available for use in any court action, but it shall be for the purpose of furnishing statistical information as to the number and cause of accidents." (1 Comp. Laws 1929, § 4722.)

"SEC. 53. Penalties for Misdemeanors.

"(a) It shall be unlawful and constitute a misdemeanor for any person to violate any of the provisions of this act unless such violation is by this act or other law of this State declared to be a felony.

"(b) Every person convicted of a misdemeanor for a violation of any of the provisions of this act for which another penalty is not provided shall for a conviction thereof within one year be punished by a fine of not more than one hundred dollars or by imprisonment in the county or municipal jail for not more than ten days; * * * (the section also includes the penalty for second and third or subsequent convictions)." (1 Comp. Laws 1929, § 4745.)

Section 54 provides the penalty for driving while under the influence of intoxicating liquor or narcotics.

Section 55 provides the penalty for reckless driving.

"SEC. 56. Penalty for failure to stop in event of accident involving injury or death to a person.

"Every person convicted of knowingly or wilfully violating section thirty of this act relative to the duty to stop in the event of certain accidents shall be punished by imprisonment in the county or municipal jail for not less than thirty days nor more than one year, or in the State prison for not less than one nor more than five years, or by fine of not less than one hundred dollars nor more than five thousand dollars or by both such fine and imprisonment. The secretary of State shall have the power to suspend the operator's or chauffeur's license of the person so convicted for as long a period as he sees fit." (1 Comp. Laws 1929, § 4748.)

Defendant asserts unconstitutionality:

(1) Because the act embraces more than one object, and subdivisions (c) and (d) of section 30 of said act embrace subjects not included in the title.

(2) Because section 30 is so "vague, indefinite, uncertain and ambiguous" that it takes liberty and property without due process of law. This objection is also made to sections 53 and 56 when read by themselves or in connection with section 30. And further because section 30 compels all persons without regard to their culpability to perform the things enumerated therein, it takes liberty and property without due process of law.

(3) Because the act by the uncertainty of its language delegates to the court and jury legislative power to create or define the offense charged, contrary to article 5, § 1, of Michigan's Constitution,

which provides that the legislative power of the State of Michigan is vested in the senate and house of representatives.

(4) Also because subdivisions (c) and (d) of section 30 compel the accused person to perform acts and give information that may compel him to be a witness against himself in a criminal case contrary to article 2, § 16, of Michigan's Constitution, which reads: "No person shall be compelled in any criminal case to be a witness against himself."

1. The insufficiency of the title is not stressed in defendant's brief, except the contention is made that subdivisions (c) and (d) of section 30 "require something to be done by the accused after the operation of the motor vehicle has ceased." This has reference to the requirement that the driver of a motor vehicle involved in an accident shall give certain specified information, render assistance in certain cases, and make report of the accident. Decision in the trial court was not based upon this contention and we think it is not well-founded. It is self-evident that the subdivisions (c) and (d) of section 30 are germane to the general purpose of this act, which is "to regulate the operation of vehicles on the highways," etc. It is well within the purport of the title of the act to include provisions governing the conduct of parties incident to highway accidents.

2. In support of his contention that section 30 should be held invalid because it is so vague, indefinite, uncertain, and ambiguous as to result in depriving one of his liberty and property without due process of law, defendant stresses a lack of certainty in the meaning of the following words or expressions as used in this statute: "Accident;" "involved in an accident;" "immediate stop;" "re-

sulting in injury or death to any person or damage to property;" "reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment if it is apparent that such treatment is necessary;" and "involved in an accident resulting in a vehicle or vehicles becoming so disabled as to be incapable of being propelled in the usual manner." A contention so similar in character as to be controlling here was made in behalf of the defendant in *People* v. *McMurchy*, 249 Mich. 147. Justice BUTZEL, writing for the court, quoted (p. 176) with approval the following from *Connally* v. *General Construction Co.*, 269 U. S. 385 (46 Sup. Ct. 126):

"The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court. In some of the cases the statutes involved were upheld; in others, declared invalid. The precise point of differentiation in some instances is not easy of statement. But it will be enough for present purposes to say generally that the decisions of the court upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, *Hygrade Provision Co.* v. *Sherman*, 266 U. S. 497, 502 (45 Sup. Ct. 141); *Omaechevarria* v. *Idaho*, 246 U. S. 343, 348 (38 Sup. Ct. 323), or a well-settled common-law meaning, notwithstanding an element of degree in the definition as to which estimates might differ, *Nash* v. *United States*, 229 U. S. 373, 376 (33 Sup. Ct. 780); *International Harvester Co.* v. *Kentucky*, 234 U. S. 216, 223 (34 Sup. Ct. 853), or, as broadly stated by Mr. Chief Justice White in *United States* v. *Cohen Grocery Co.*, 255 U. S. 81, 92 (41 Sup. Ct. 298, 14 A. L. R. 1045), 'that, for reasons found to result either from the

text of the statutes involved or the subjects with'
which they dealt, a standard of some sort was af-
forded.' ''

Justice Butzel added (p. 178):

''As pointed out in the opinion upholding the con-
stitutionality of the law in the *Maki Case* (245 Mich.
455), there are many crimes on our statute books
which must be defined by the use of words of a gen-
eral and flexible meaning, and the existence or non-
existence of the essential elements of these crimes
becomes a question of fact to be determined in each
case. It is not possible to use any but general terms
for describing the following statutory crimes: wil-
ful, deliberate and premeditated killing; committing
an assault with a deadly weapon. * * * It is nec-
essary to apply the rule of reason or common under-
standing to many statutes in order to carry out their
purpose.''

It would be little short of judicial nonsense to hold
that the State in defining offenses must use such
simple or exact terms that they cannot possibly be
misunderstood or distorted into uncertainty. If the
language used conveys the intended meaning with
reasonable certainty it is sufficient. Terms held to
be sufficiently definite, clear, and explicit to meet
the requirements of important business contracts
and to be the medium of vesting property rights are
not less sufficient when used in defining unlawful
acts.

There is no occasion for departure from the well-
established law that penal statutes must be ex-
pressed in clear and definite terms.

''In creating an offense which was not a crime at
common law, a statute must of course be sufficiently
certain to show what the legislature intended to
prohibit and punish, otherwise it will be void for

uncertainty. *Reasonable certainty,* in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible." 16 C. J. pp. 67, 68.

"And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally* v. *General Construction Co., supra,* 391.

But in connection with the context and subject-matter of this statute, the expressions above quoted in the instant case have such a fixed and well-understood meaning as not to render section 30 of the act invalid, notwithstanding determination of the exact meaning of some of these words or phrases may require the exercise of judgment. In *Cline* v. *Frink Dairy Co.,* 274 U. S. 445 (47 Sup. Ct. 681), Chief Justice Taft, quoting with approval from *Nash* v. *United States,* 229 U. S. 373 (33 Sup. Ct. 780), said:

"The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death."

See, also, *People* v. *Dow,* 155 Mich. 115.

Defendant also asserts there is such uncertainty in the penal provisions of the act as renders it invalid. In this case the people evidently intended to charge defendant under subdivision (a) of section 30 with leaving the scene of an automobile accident which resulted in personal injury to another. If found guilty of this charge he would be sentenced under the provisions of section 56. If properly informed against there would be no uncertainty as to

the act with which defendant is charged or the statutory penalty. If there is uncertainty in the instant case, it is due to a faulty information which adds to the above-noted óffense the further charge in the same count that the defendant "did fail and neglect to give his name, address," etc. Clearly this latter portion of the information charges violation of subdivision (c) of section 30, which is punishable as a misdemeanor under subdivision (b), section 53. While no question is raised as to the impropriety of charging defendant with two separate offenses in the same count, one a felony and the other a misdemeanor, we point it out as a source of uncertainty as to the possible penalty. *People* v. *Marks,* 255 Mich. 271; *People* v. *Lahey,* 256 Mich. 250. Obviously successful attack on the validity of this statute cannot be based on faulty pleadings. We do not find the statute invalid by reason of its being "vague, indefinite, uncertain or ambiguous," either in its provisions wherein the criminal acts are defined or in those wherein the penalties are specified. The legislature has fixed the conduct which is penalized, specified the penalty; and no unusual difficulty is apparent in the administration of the law by the courts. As to the application of the various penal clauses of this uniform motor vehicle act, see *State* v. *Hanno,* 58 S. D. —, (238 N. W. 23). If, however, the circumstances of a particular prosecution under this statute should develop uncertainty as to which penal clause was applicable, the accused would be entitled to have the lesser of the two penalties administered. *People* v. *Lockhart,* 242 Mich. 491.

Appellee's brief points out that the "*act* itself does not use the words, 'knowingly' or 'wilfully' or words of similar import" incident to penalizing one

who leaves the scene of an accident without complying with the statutory provisions. The observation is not applicable to failure to stop in the event of an accident involving injury or death to a person which is specifically made punishable under section 56, because the latter section provides "every person convicted of *knowingly* or *wilfully* violating section thirty * * * shall be punished," etc. There are many other offenses embodied in the act, such as driving without proper lights, exceeding the speed limit, failure to give the information specified in section 30 before leaving the scene of the accident, etc. Of such statutory offenses we have said:

"When a statute does not make *intent* an element of the offense, but commands an act to be done or omitted which, in the absence of the statute, might have been done or omitted without culpability, ignorance of the fact, or state of things contemplated by the statute, will not excuse its violation." (Syllabus) *People* v. *Welch,* 71 Mich. 548 (1 L. R. A. 385).

In *People* v. *Roby,* 52 Mich. 577 (50 Am. Rep. 270), Chief Justice Cooley said:

"I agree that as a rule there can be no crime without a criminal intent; but this is not by any means a universal rule * * * Many statutes which are in the nature of police regulations * * * impose criminal penalties irrespective of any intent to violate them."

In *People* v. *Snowberger* (syllabus), 113 Mich. 86 (67 Am. St. Rep. 449), we said:

"It is competent for the legislature, under the police power, to provide for the protection of the public health by making it an offense punishable by fine and imprisonment to sell adulterated food or

drink, irrespective of the seller's knowledge of the adulteration.''

To the same effect see *People* v. *Sybisloo*, 216 Mich. 1 (19 A. L. R. 133), and *People* v. *Cramer*, 247 Mich. 127.

As noted above, this statute, in part at least, is a police regulation. The fact that it provides punishment for certain specified acts without including the element of intent or knowledge does not render the act unconstitutional.

The point is urged by defendant that one who without culpability is involved in an automobile accident by being required to render assistance to those injured is deprived of liberty and property without due process of law. While not controlling, it is worthy of note that such provisions are common to motor vehicle acts of many States, and such have been in the statute of this State almost from its earliest enactment. See section 18, Act No. 196, Pub. Acts 1905. One who enjoys the rights and benefits afforded by organized society must expect to make his contribution thereto. Due to human imperfections, it is not always possible to exactly equalize or proportion between members of society the contribution required of them respectively or to provide a specific *quid pro quo*. A property owner must pay school taxes though he may not have a child or other relative attending a public school. A private citizen may be required without compensation to aid the sheriff in serving process or preserving the peace (3 Comp. Laws 1929, §§ 13696 and 16578). In so doing, the citizen is deprived of his time and subjected to unusual risk without compensation; but that, as in the other like cases, is his contribution to society, for which he with others receives and enjoys the protection of person and

property afforded by organized government. So, under this section of the statute, in case of accident, A is required to act the part of a Good Samaritan to B, and A's compensation is his right as a member of organized society to expect and demand in case of his injury like assistance from others. In final analysis, it is a humanitarian police regulation and is nonetheless valid as such notwithstanding it may require the time or property of one who finds himself within the provisions of the law.

"That attribute of sovereignty known as 'police power,' though difficult of definition, includes the power of legislation deemed essential for protection of the public peace, good order, morals, safety, and health." *Locke* v. *Ionia Circuit Judge,* 184 Mich. 535.

"Statutes enacted by the legislature in the exercise of the police power, for the promotion or preservation of the public safety, health or morals, may sometimes impinge upon the liberty of individuals by restricting their use of their property, or abridging their freedom in the conduct of their business." Black's Interpretation of the Law, § 115.

It is settled in this State that use of automobiles on public highways is subject to regulation under the police power. *Stapleton* v. *Independent Brewing Co.,* 198 Mich. 170 (L. R. A. 1918A, 916); *Bowerman* v. *Sheehan,* 242 Mich. 95 (61 A. L. R. 859). And under the police power, if public welfare or public safety requires regulation of the use of such property, the otherwise private right of unrestricted use must yield to the public exigency. *People* v. *Smith,* 108 Mich. 527 (32 L. R. A. 853, 62 Am. St. Rep. 715). Further, in passing upon the validity of the provisions of this uniform motor vehicle act, it must not only be viewed as a police regulation,

but also as an enactment under which one is granted the privilege or license of operating a motor vehicle upon the public highways. By constitutional provisions, the control of highways is vested in the State and its municipal subdivisions. Michigan Constitution, art. 8, §§ 26–28.

In accepting the license from the State, one must also accept all reasonable conditions imposed by the State in granting the license. The State has seen fit to impose as such conditions the various provisions embodied in section 30. These provisions are not only humanitarian, but obviously contribute to the mutual welfare and safety of all users of the highways. If these conditions prescribed in the statute impose something of a burden upon certain persons under certain conditions, the bearing of such burden is not unlike that required of other licensees. It is elementary law, where special privileges are granted by the State, special duties in connection therewith may be exacted without providing compensation therefor. For example, a doctor licensed to practice medicine is required by statute to prepare and file without compensation birth certificates containing certain information which the licensed physician must secure. *People* v. *Cramer, supra.* So, under the motor vehicle act, the licensed autoist may be required to report an accident without compensation and to give of his time and make use of his property in rendering apparent necessary assistance in the specified cases of automobile accidents. And these conditions may be lawfully imposed on the autoist as a licensee regardless of whether he is chargeable with responsibility for the accident in which he is involved. The right to impose the condition is not based upon culpability, but instead it is incident to his status as a licensee.

3. The foregoing sufficiently embodies our reasons for holding against defendant's contention that the act, by the uncertainty of its language, delegates to the court and jury legislative power to create or define the offense charged, contrary to article 5, § 1, of Michigan's Constitution, which provides that the legislative power of the State of Michigan is vested in the senate and house of representatives.

4. Does the statute (subdivisions [c] and [d] of section 30) compel one to be a witness against himself and therefore violate the Constitution, art. 2, § 16? We think not. Subdivision (c) does not require one to reveal any fact or circumstance that is incriminating in any way. If one were testifying as a witness he certainly could not decline to answer or give such information as is required in this section on the ground that it was incriminating, because it is not. So far as the owner of the automobile is concerned, reference to the record obtainable from the license plates which he must carry on his machine would give the same information as required by section (c). We know of no decision that goes so far as to challenge the validity of a statute requiring display of license plates as a means of identification. *People* v. *Schneider,* 139 Mich. 673 (69 L. R. A. 345, 5 Ann. Cas. 790). Subdivision (d), which requires report of an accident, expressly provides: "Such report shall not be available for use in any court action." Clearly this provision saves subdivision (d) from the objection urged. Neither subdivision (c) nor (d) of section 30 impinges upon the constitutional inhibition of compelling one charged with an offense to be a witness against himself. Similar provisions have been sustained in various jurisdictions. See *Woods* v. *State,* 15 Ala. App. 251 (73 South. 129); *People* v. *Rosenheimer,* 209 N. Y. 115 (102 N. E. 530, 46 L. R. A. [N. S.]

977, Ann. Cas. 1915A, 161) ; *Ex Parte Kneedler,* 243 Mo. 632 (147 S. W. 983, 40 L. R. A. [N. S.] 622, Ann. Cas. 1913C, 923) ; *State* v. *Masters,* 106 W. Va. 46 (144 S. E. 718). For numerous other cases see note 42 C. J. p. 1384.

As against the objections urged, we are of the opinion that the act in question is valid. Defendant's motion to quash should have been denied.

The case is remanded to the circuit court, with direction to vacate the order quashing the information and discharging the defendant from custody, and to proceed with the prosecution and final disposition of the charge made against defendant.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.